CHAUNCY ABBOTT, JR., ET AL., APPELLANTS, V. FRANCES R.
WAGNER ET AL., APPELLEES.

FILED APRIL 11, 1922.  No. 21869.

1. **Remainders:** VENUE: SUIT BY REMAINDERMAN. Where a testa-
tor's will gives a life estate in personal property to his widow,
with added power in her to dispose of and use the corpus of the
property to the extent she may desire for her personal use and
enjoyment, with remainder over to designated persons, and the
widow, who resides in another state, fraudulently, or by gift,
transfers a substantial portion of the property to another, a suit
in equity by the remaindermen, seeking to charge the transferee
as constructive trustee of the property so transferred, may be main-
tained in any county in this state where such transferee may be
served with summons, no matter where the property may be lo-
cated. The life tenant is not a necessary party to such suit.

2. **Process:** CONSTRUCTIVE SERVICE: TRUST PROPERTY. Where the
owner of a life estate in personal property under a will, who re-
sides in another state, wrongfully transfers such property to an-
other by gift in fraud of the rights of the remaindermen, such
property being located in this state, jurisdiction over such life
tenant cannot be acquired by constructive service in an action
brought by the remaindermen in a county in this state other than
the county where such property is located, even though jurisdic-
tion is acquired over the donee by personal service of summons
upon him in the county where the suit is instituted and the action
there properly maintainable against such donee.

3. —— ——. Section 7627, Rev. St. 1913, which provides that,
"when the action is rightly brought in any county, according to
the provisions of this Code, a summons shall be issued to any other
county, against any one or more of the defendants at the plaintiff's
request," does not authorize service of summons upon a defendant
in a foreign state in a case of this nature.

4. **Trusts:** JURISDICTION. A district court of this state has jurisdic-
tion of a suit in equity for relief based upon a breach of a con-
structive trust, even though the granting of the relief prayed for
involves the interpretation of a will which has been admitted to
probate in a foreign state.

5. **Limitation of Actions:** TRUSTS. "The statute of limitations be-
gins to run in favor of a trustee ex maleficio of a constructive
trust from the time of the discovery of the wrong or fraud, for

Abbott v. Wagner.

the prevention of which the trust is imposed." *Hanson v. Hanson*, 78 Neb. 584.

6. **Wills:** RESIDUARY CLAUSE: CONSTRUCTION. A testator, by his will, after making certain specific provisions, and giving to his widow an absolute bequest, disposed of the residue of his estate as follows: "Subject only to the foregoing provisions, I give and bequeath unto my said wife, all the rest and residue of my estate real, personal and mixed wheresoever the same may be located or found for and during the full term of her natural life, the same to be her own individual property to use, enjoy and dispose of as to her shall seem fit. At the time of her decease the principal of this bequest, or what shall remain thereof, shall be divided equally between my beloved mother, Anna D. Fuller, and my said half-brother or their heirs." *Held*, that the surviving widow took but a life estate in such residue, with power to dispose of and use the principal as far as may be necessary and reasonable for her support, comfort and enjoyment.

7. ——: ——: ——. The widow of the testator to whom his residuary estate was left for life, with power "to use, enjoy and dispose of as to her shall seem fit," while entitled to the full and reasonable enjoyment of the estate consistent with her former manner of living and her circumstances in life, and considering the value of the estate, must not consume, deplete or encroach upon the corpus of the estate more than sufficient to attain the purpose of the testator, which evidently was to provide for her comfort for the remainder of her life and yet preserve to the remaindermen all of the estate not required by the widow for such purpose.

8. **Remainders:** RIGHT TO SUE. Persons who have an interest in personal property in the nature of a remainder may maintain a suit to protect and preserve their interests against the life tenant, or against one to whom the property has been transferred by gift, or who has received it under circumstances amounting to a fraud upon the rights of the remaindermen, where the transferee is not a *bona fide* purchaser, and in such suit a court of equity has power to make such orders and to require such security as may be necessary to protect and safeguard the interests of the remaindermen.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed in part, and reversed in part.*

*Stout, Rose, Wells & Martin*, for appellants.

*William Baird & Sons*, contra.

Abbott v. Wagner.

Heard before MORRISSEY, C. J., FLANSBURG and ALDRICH, JJ., HOSTETLER and MORNING, District Judges.

MORNING, District Judge.

Nathan W. Wells died on the 12th day of August, 1909, leaving a last will which was duly admitted to probate in the surrogate court of Ulster county, New York, that being the place of his domicile. Omitting the attestation clause and the signature, the will is as follows:

"Know all men by these presents: That I, the undersigned Nathan W. Wells of Schuyler, Nebraska, being of sound and disposing mind and memory, do make, publish and declare this to be my last will and testament, that is to say:

"Item First. It is my will and I direct that all of my just debts including those of my last sickness and suitable funeral charge be first paid.

"Item Second. I give and bequeath unto my dearly beloved wife, Frances R. Wells, all and singular my life insurance policies, placed upon my life (and the entire proceeds therefrom coming to my estate) now aggregating thirty-five thousand dollars or thereabouts, the same to be her own property absolutely.

"Item Third. I give bequeath and release unto my half-brother, Chauncy Abbott, whatever he may be indebted to me at the time of my decease hereby fully acquitting him from all obligation as a debtor to my estate on account of all such indebtedness.

"Item Fourth. Subject only to the foregoing provisions, I give and bequeath unto my said wife, all the rest and residue of my estate real, personal and mixed, wheresoever the same may be located or found, for and during the full term of her natural life, the same to be her own individual property to use, enjoy and dispose of as to her shall seem fit. At the time of her decease the principal of this bequest, or what shall remain thereof, shall be divided equally between my beloved mother, Anna D. Fuller, and my said half-brother or their heirs.

"Item Fifth. I hereby nominate my said wife. to be the executrix of this my last will and testament without being required to give bond as such executrix and I hereby revoke all former wills by me made and declare this instrument to be my last will and testament."

Frances R. Wells, surviving widow of the testator, named in said will as executrix, was appointed and duly qualified and continued to act as such executrix until the estate was finally closed. Settlement and distribution of the estate and discharge of the executrix was had January 9, 1911. While the estate was pending the widow married the defendant Ernest O. Wagner, and she is designated in this proceeding as Frances R. Wagner. Since the final decree was entered in said estate, and on April 2, 1916, the mother of testator, who was one of the remaindermen named in the fourth paragraph of said will, died leaving as her only heir Chauncy Abbott, half-brother of testator, who was the other remainderman named in said paragraph. On July 27, 1918, said Chauncy Abbott died leaving as his only heirs the plaintiffs in this case. On December 2, 1919, plaintiffs commenced this action in the district court for Douglas county, as the only heirs of Chauncy Abbott, deceased, against Frances R. Wagner, Ernest O. Wagner, her present husband, Wells-Abbott-Nieman Company, a corporation, having its principal place of business at Schuyler, Nebraska, and the York Milling Company, a corporation, having its principal place of business at York, Nebraska. Summons was personally served upon the defendant Ernest O. Wagner in Douglas county and on the two corporation defendants in Colfax and York counties, respectively. Frances R. Wagner, being a non-resident of, and not being found in, this state, the affidavit required by statute for constructive service, was duly filed and summons was thereafter served upon her at her home in Connecticut.

The petition alleges the death of the testator, sets out his will in full, alleges that it was duly probated in the surrogate court of Ulster county, New York, the domicile

of the testator, and that defendant, Frances R. Wagner, formerly Frances R. Wells, surviving widow of testator, was appointed and qualified as executrix; that the estate was closed and the executrix discharged on January 9, 1911; that Anna D. Fuller, mother of the testator, died April 2, 1916, leaving Chauncy Abbott, the half-brother of testator, as her sole heir, and that said half-brother died July 27, 1918, leaving plaintiffs as his only heirs; that at the time of making her final report there remained in the hands of said executrix, after making all proper deductions, personal property of the value of $152,067.19, including 936 shares of the capital stock of the defendant Wells-Abbott-Nieman Company and 200 shares of the capital stock of the defendant the York Milling Company, all of which personal property was, by said surrogate court, distributed to and received by said defendant Frances R. Wagner, as residuary legatee under said will, and that she claimed and still claims all of said property in her own right, with full power to use, enjoy and dispose of it as she may deem fit, without regard to the rights of the plaintiffs, except in so much of the property as may remain undisposed of at her death. It is further alleged that said Frances R. Wagner and her present husband, the defendant Ernest O. Wagner, are hostile and antogonistic toward the plaintiffs, and have conspired and are conspiring to so manage the property of said estate as to wrongfully and fraudulently deprive the plaintiffs of their interest therein; that pursuant to said wrongful and fraudulent scheme, and in violation of her fiduciary relation toward plaintiffs, said Frances R. Wagner is wrongfully and fraudulently asserting her alleged right to use and dispose of said property so received under said will, and, in contravention of the rights of plaintiffs in said property, has already transferred by sale, as well as gift, large and valuable portions of said property, and has given the said shares of stock in said corporations to her husband, the defendant Ernest O. Wagner, without consideration, with the fraudulent intent to deprive plaintiffs of their interest

in said property; that said Ernest O. Wagner is now wrongfully asserting full right, title and interest in said shares; that said Frances R. Wagner is threatening to wrongfully and unjustly dispose of still other large and valuable portions of said property to the like detriment of plaintiffs; that the said Frances R. Wagner, instigated and encouraged by her husband, Ernest O. Wagner, has undertaken to so manage, cover up and disguise her dealings with the said property that the plaintiffs will be deprived of that interest in said property to which, under said will, they are entitled, and that she will continue this line of conduct, in violation of the rights of plaintiffs in said property, and of her duty toward plaintiffs under said will with relation thereto, unless restrained by this court; that said Frances R. Wagner has full knowledge of her dealings with reference to said property, but plaintiffs have no means of knowing in detail, though, from such information as they have, they believe these dealings to have been wrongful and fraudulent and designed to deprive plaintiffs of that property which it was the intention of said testator to give them by his will; that plaintiffs did not discover the fraud attempted by defendants Frances R. Wagner and Ernest O. Wagner, as complained of, until within two years prior to the filing of the petition; that the threatened injury is irreparable and that there is no adequate remedy at law. The prayer, in substance, is that the alleged gifts of said shares of corporation stock be canceled, and that the corporation defendants and their officers be restrained from recognizing, or in any way giving effect to, the said gifts; that said Ernest O. Wagner be restrained from in any way meddling with, or attempting to assert any control over, the property of which his wife, the said Frances R. Wagner, is custodian or trustee under said will; that said Ernest O. Wagner be declared and held by the court to be constructive trustee for the benefit of plaintiffs, under said will, of any and all property of said estate of which he has become possessed in violation of said will; that said will be construed and the rights of plain-

tiffs defined thereunder; that said Frances R. Wagner be declared a trustee of the property of said testator for the benefit of plaintiffs as set out in said will; that she be required to account to the court for her dealings with reference to said property, and that she be required to bring into court all books, papers, records, and other data which may enable the court to determine what her dealings have been, and that she be required to give good and sufficient security for the proper discharge of her duties under said will for the benefit of plaintiffs, and that, in the event of her failure to do so, the court require her to execute a proper conveyance of all said property, other than such as the court shall find she was entitled to use for her own benefit, and that the conveyance be made under order of court to such person as the court may approve as a suitable trustee to hold the property in question and administer it in accordance with the wishes of said testator as disclosed by his will, and that defendants Frances R. Wagner and Ernest O. Wagner be required to reimburse plaintiffs their costs and expenses incurred in this proceeding, and for general equitable relief.

The defendant Frances R. Wagner entered a special appearance in the case as follows:

"Comes now Frances R. Wagner, named as defendant above, and appears specially and for the sole purpose of objecting to the jurisdiction of the court over this defendant, for the reason that this is not an action *in rem* and not an action in which constructive service is authorized under the laws of Nebraska, and that the only service attempted upon this defendant is constructive service in the state of Connecticut, and that no legal service of process has been had upon this defendant."

Each of the other defendants filed separate demurrers to the petition, all identical in form, the several grounds of demurrer, which may be stated in abbreviated form, were: That the court had no jurisdiction either of the persons of the defendants or the subject-matter of the action; that it appeared from the face of the petition that

the subject of the action is solely within the jurisdiction of the surrogate court of the state of New York, and not within the jurisdiction of this court; that it appears from the petition that this court has no jurisdiction to determine and adjudicate the claimed rights of the said plaintiffs; that it appears from the petition that there is pending and undetermined a proceeding in the probate court of deceased's domicile at the time of his death, the surrogate court of Ulster county, New York, in the matter of the estate of Nathan W. Wells, deceased, commenced and pending prior to the commencement of this action, which court has sole and exclusive jurisdiction for determining and adjudicating the alleged rights of plaintiffs as set forth in the petition; that there is a defect of parties defendant; that it appears from the petition that more than four years have elapsed since the accrual of plaintiffs' alleged cause of action; that the averments of the petition, and the terms of the will, preclude plaintiffs' right of recovery; and that the petition does not state facts sufficient to constitute a cause of action.

The court below sustained the special appearance of defendant Frances R. Wagner and the several demurrers of the other defendants and dismissed the action. Plaintiffs appealed to this court.

The first question for our determination is that of jurisdiction. Broadly speaking, the action is one to impress a trust in favor of plaintiffs upon the residuary estate of Nathan W. Wells which is disposed of in the fourth paragraph of his will, and to enjoin the defendants from so dealing with said property as to injure, impair, or defeat the rights of plaintiffs as remaindermen therein. As to the nonresident defendant, Frances R. Wagner, the venue of this action is controlled by section 7619, Rev. St. 1913, which reads: "An action other than one of those mentioned in the first three sections of this chapter, against a nonresident of this state or a foreign corporation may be brought in any county in which there may be property of, or debts owing to said defendant, or where said defendant may be

Abbott v. Wagner.

found; but if such defendant be a foreign insurance company, the action may be brought in any county where the cause, or some part thereof, arose."

There is no allegation that defendant Frances R. Wagner has any property in Douglas county, nor that there are any debts owing to her in said county, nor is any part of the object of the suit to reach property of hers nor debts owing to her in said county. She was a nonresident and was not found and served in this state.

Appellants contend that, since the action was rightly brought in Douglas county as against defendant, Ernest O. Wagner, the court acquired jurisdiction of the defendant Frances R. Wagner by constructive service under section 7640, Rev. St. 1913. We cannot so interpret said statute. That section deals with service only, and not with venue. The authority for acquiring jurisdiction of defendants not served in the county, where suit is rightly brought as against some of the defendants, is derived from section 7627, Rev. St. 1913. That section provides:

"When the action is rightly brought in any county, according to the provisions of this Code, a summons shall be issued to *any other county*, against any one or more of the defendants at the plaintiff's request."

It will be seen that the above-quoted section of the statute has nothing to do with constructive service upon nonresidents. It only has to do with the issuance of summons to *other counties* for such defendants as are not in the county where the action is rightly brought. To acquire jurisdiction over a nonresident defendant by constructive service under said section 7640, the action must be one instituted because the defendant has property or debts owing to him in the county where the suit is brought, which is "sought to be taken by any of the provisional remedies, or to be appropriated in any way," or it must be a suit which "relates to, or the subject of which is real or personal property in this state," and that the nonresident defendant "has or claims a lien or interest, actual or contingent therein, or the relief demanded consists wholly or

partially in excluding him from any interest therein."
This suit is not of the character contemplated by said sec-
tion, and, if it were, it would not justify constructive
service on defendant Frances R. Wagner in Connecticut,
because there is no claim or pretense that she has any
property or debts owing to her in Douglas county. By
the allegations of the petition to the effect that the corpo-
ration stock referred to, which is the only portion of the
estate alleged to be in this state, has been parted with by
Frances R. Wagner, plaintiffs have precluded us from
treating such stock as "personal property" in which said
defendant "has or claims a lien or interest, actual or con-
tingent," nor, in view of said allegations, can we treat this
suit as one wherein "the relief demanded consists wholly
or partially in excluding him from any interest therein."
By giving said stock to her husband she has excluded her-
self from any further interest in it. Nor would the fact,
if it were a fact, that she had property in this state give
the court jurisdiction justifying constructive service, un-
less the property, or part of it, were situated in the county
where the suit was commenced. Rev. St. 1913, sec. 7619.
We think it clear that the court below acquired no juris-
diction over said defendant Frances R. Wagner by con-
structive service had upon her in the state of Connecticut,
and that her special appearance was rightly sustained.

This action is transitory in character and is maintain-
able in Douglas county as against the defendant Ernest O.
Wagner, since he was personally served with summons in
that county. Rev. St. 1913, sec. 7620.

The action being rightly brought in Douglas county as
against the defendant Ernest O. Wagner, jurisdiction was
acquired over the two corporation defendants by service
had upon them in the counties where they respectively
maintain their principal places of business. Rev. St. 1913,
sec. 7627; *Cobbey v. State Journal Co.*, 77 Neb. 619.

In the demurrers filed by the defendants, other than
Frances R. Wagner, the jurisdiction of the court over the
subject-matter is challenged, and this, in itself, constitutes

a general appearance by all of said defendants conferring jurisdiction over their persons. *Clark v. Bankers Accident Ins. Co.*, 96 Neb. 381. The petition contains no allegations as to where the certificates of corporation stock are located, but this is not material. In any event, the certificates are not stock but only evidence of stock ownership. The situs of corporation stock, in the absence of statutory provision to the contrary, is in the county and state where the corporation resides; that is, where it has its principal office or place of business. 2 Clark & Marshall, Private Corporations, 1152, 1157; *Jellenik v. Huron Copper Mining Co.*, 177 U. S. 1; *Hook v. Hoffman*, 16 Ariz. 540; *Winslow v. Fletcher*, 53 Conn. 390, 55 Am. Rep. 122; 5 Fletcher, Corporations, sec. 3434. If the residuary estate of the testator with which we are here concerned was impressed with a trust in favor of plaintiffs, or if, under testator's will, the life tenant owed any duty toward plaintiffs in relation thereto, and she has wrongfully transferred any part of it to her present husband, the defendant Ernest O. Wagner, under circumstances which in equity amount to a breach of trust by the life tenant, and a fraud upon the rights of plaintiffs, then plaintiffs have the right to proceed against the said Ernest O. Wagner in a court of equity, wherever he may be found and served with a summons, no matter where the property may be located, even though it may be in a state other than the one where the action is instituted. 27 R. C. L. 798; *Burnley v. Stevenson*, 24 Ohio St. 474, 15 Am. Rep. 621; *State v. Superior Court*, 55 Wash. 328, 133 Am. St. Rep. 1030; *Newton v. Bronson*, 13 N. Y. 587, 67 Am. Dec. 89; *Roberts v. Roberts*, 124 Mich. 414; *State v. District Court of Blue Earth County*, 146 Minn. 422. In *Fall v. Fall*, 75 Neb. 104, 126, this doctrine was applied to lands lying in another state, and this court there quoted with approval the following language from the opinion of Chief Justice Marshall in *Massie v. Watts*, 6 Cranch (U. S.) 148:

"Upon the authority of these cases, and of others which are to be found in the books, as well as upon general prin-

ciples, this court is of opinion that, in a case of fraud, of trust, or of contract, the jurisdiction of a court of chancery is sustainable wherever the person be found, although lands not within the jurisdiction of that court may be affected by the decree."

If the defendant Ernest O. Wagner has come into possession of any part of the estate of Nathan W. Wells referred to in the fourth paragraph of the will, under circumstances which are, in equity, sufficient to charge him as constructive trustee thereof for the benefit of plaintiffs, the court below had jurisdiction to make all suitable orders and decrees with reference thereto which might be found necessary to protect the rights and interests of plaintiffs therein, no matter where the property so wrongfully received by him may be located, and, if disposed of by him, to require him to suitably account therefor. In such matters equity acts upon the person of the defendant in bringing about desired results. Of course, the court has no power to require the said Ernest O. Wagner to account for any portion of said estate which he has not in some manner wrongfully, or in violation of said trust, received from said Frances R. Wagner. But as to that portion, if any, of said estate which he has received under circumstances such as complained of in the petition, he may be held, whether jurisdiction of the defendant Frances R. Wagner is acquired by the court or not, since she is not a necessary party to a suit involving property which she has fraudulently or wrongfully transferred to her said husband. If the allegations of the petition are true, she no longer has any interest in the property which has been transferred to her husband. She having voluntarily given it away, the court is not concerned with protecting her against the results of her own wrongful conduct. A court of equity is not charged with any duty to restore to her property with which she has wrongfully parted. She had the right to the use and income of the property for life, and this she could rightfully assign or transfer to another, and the court will be under the necessity of pro-

tecting the assignee in such use and income under such restrictions and safeguards as will, at the same time, protect the interests of the remaindermen; but the right to dispose of the corpus of the property was a limited right, as we shall hereafter show, and could be exercised only by her for her own legitimate and reasonable personal purposes, consistent with the objects for which the life estate was created, and supplemental thereto, and could not be assigned and transferred to another, except by transfers made in good faith for such fair considerations and for such objects as must have been in the contemplation of testator when making his will. Any abuse of the power of disposal conferred upon her by the will which places the rights of the remaindermen in serious danger and which indicates bad faith, fraud, or a reckless disregard of the rights of the remaindermen in the residuary estate, on the part of the life tenant, gives the remaindermen the right to ask and receive from a court of equity adequate protection. 26 R. C. L. 1373, sec. 234; 17 R. C. L. 625, sec. 15. If the allegations of the petition are true, it is the duty of the court to treat the defendant Ernest O. Wagner as constructive trustee as to any part of said residuary estate which he has wrongfully received. It is merely a question of following trust property into the hands of a party to whom, if the allegations of the petition are true, it has been wrongfully transferred to the danger or serious detriment of the rights of the remaindermen, and we do not understand that the right to maintain such an action is at all dependent upon the ability of the complaining party to bring the original trustee within the jurisdiction of the court. Any other rule would place it in the power of the life tenant of personal property, or of real estate, where a power of sale is conferred by the will, to defeat the rights of the remainderman by transferring the property to a resident of a state other than the one in which the life tenant resides, and then remaining out of the jurisdiction of the courts of such other state.

It is insisted by appellees that this suit is one to construe

a will and to define the rights of the parties thereunder, and that the probate court has exclusive original jurisdiction. If this were an action by the executrix to have the will construed for her guidance as to its proper execution and as to the proper distribution of the estate, this contention would be sound. Such, however, is not the nature of this suit. This estate has long since been administered and closed and the estate properly distributed according to the terms of the will. At the time of distribution there was no question as to the right of the surviving widow to take the residue of the estate upon the terms and conditions and for the purposes specified in the will. The necessity for the present suit arises from what is alleged to be the wrongful and fraudulent conduct of the surviving widow since distribution, in assuming to be the absolute owner of the property in question, with full power to dispose of it as she may desire for any and all purposes, when, as plaintiffs allege, she was given but a life estate by the terms of the will, with power of disposal and use limited to her own reasonable support and maintenance. If the construction placed upon the will by plaintiffs is the correct one, then there was a trust created by the will, or, at least, a constructive trust arises out of it in favor of plaintiffs, as to any residue of said property which may remain at the death of said Frances R. Wagner, the life tenant, over and above what said life tenant has, in good faith, used and consumed for her reasonable personal purposes and enjoyment; and, to protect plaintiffs' interest in said property from being dissipated and diverted to purposes other than those contemplated by testator, this suit is maintainable in the district court, even though it involves a construction of said will. *Youngson v. Bond,* 69 Neb. 356; *Andersen v. Andersen,* 69 Neb. 565; *St. James Orphan Asylum v. Shelby,* 75 Neb. 591; *Adams v. Dennis,* 76 Neb. 682; *Fisher v. Fisher,* 80 Neb. 145; *Klug v. Seegabarth,* 98 Neb. 272; *Currier v. Johnson,* 19 Colo. App. 94.

For the reasons stated, we hold that the court below had jurisdiction of the subject-matter and of the persons of all

of the defendants other than Frances R. Wagner.

We are now brought to a consideration of the question whether or not the petition states a cause of action. This involves an interpretation of the will of Nathan W. Wells. If the fourth paragraph of the will—the provision here involved—which disposes of the residue of the estate, vests the absolute title of the property in the surviving widow, the petition fails to state a cause of action. If, on the other hand, said provision of the will creates in the widow only a life estate with power of use and disposal by her for her own reasonable personal support and enjoyment, with remainder to plaintiffs as the heirs of testator's half-brother, then the petition does state a cause of action, unless, on its face, it is disclosed that such cause of action is barred by the statute of limitations.

Where a will, in express terms, creates a life estate in the donee, and annexes thereto a power of appointment or disposal, with remainder over to certain named beneficiaries, the first taker takes but a life estate. This is the rule established and adhered to by a very large majority of the courts which have been called upon to pass upon the question. It is the rule to which this court is committed. In *Loosing v. Loosing,* 85 Neb. 66, the matter is dealt with in the first section of the syllabus, as follows:

"If an estate is devised to a person generally or indefinitely with a power of disposition, it carries the fee; but, if the testator gives the first taker an estate for life only with a power to dispose of the remainder to definitely described individuals, the express limitation for life will control the operation of the power and prevent it from enlarging the life estate to a fee."

In the body of the opinion in the *Loosing* case, Judge Root took note of the fact that there were decisions holding the opposite view, and said: "While cases are not lacking to sustain the proposition that a power of sale added to a life estate in real property vests the donee with an estate in fee simple, we think the weight of authority is to the contrary. 1 Sugden, Powers, ch. 3; 4 Kent, Commentaries

(Rev. ed.) pp. *319, *536; *Fairman v. Beal,* 14 Ill. 244; *Walker v. Pritchard,* 121 Ill. 221; *Ducker v. Burnham,* 146 Ill. 9; *Burleigh v. Clough,* 52 N. H. 267; *Mansfield v. Shelton,* 67 Conn. 390; *Little v. Giles,* 25 Neb. 313."

There is appended to the case of *Steiff v. Seibert,* 128 Ia. 746, as published in 6 L. R. A. n. s. 1186, an exhaustive note in which the annotator collects and analyzes the English and American decisions on the subject now under consideration. A note on the same subject will be found appended to *Warren v. Ingram,* 96 Miss. 438, Ann. Cas. 1912 B, 424. Under the title "Powers" in 21 R. C. L. 776, sec. 5, the same conclusion is announced. See, also, 17 R. C. L. 624, sec. 13, *Burleigh v. Clough,* 52 N. H. 267.

In *Smith v. Bell,* 6 Pet. (U. S.) *68, the will under consideration provided: "I give to my wife, Elizabeth Goodwin, all my personal estate, whatsoever and wheresoever, and of what nature, kind and quality soever, after payment of my debts, legacies and funeral expenses; which personal estate, I give and bequeath unto my said wife, Elizabeth Goodwin, to and for her own use and benefit and disposal, absolutely; the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin."

Chief Justice Marshall delivered the opinion of the court, and held that the said Jesse Goodwin, testator's son, took a vested remainder after the death of Elizabeth Goodwin. See, also, *Powers v. Wells,* 244 Ill. 558; *Underwood v. Cave,* 176 Mo. 1; *Keown's Estate,* 238 Pa. St. 343.

But counsel for appellees contend that it is not a question of whether or not the power of disposal converts what would otherwise be a life estate into a fee, b ya mere arbitrary rule of law, because, as they urge, testator, by the provision of his will here involved, did not intend to create ? life estate, but that his clear intention was to vest in her the fee. It is argued that the will is complete and unambiguous in its terms, and that the language of the testator must be given its plain and ordinary meaning. Much emphasis is placed upon the language, "the same to be her own individual property to use, enjoy and dispose of as to

her shall seem fit." But we must consider the whole will, and if possible, give effect to all its provisions in arriving at the true meaning and intent of the testator. In the second paragraph of the will the testator made a definite and absolute bequest to his wife. There is no question but that he knew how to vest absolute title in his wife when such was his intention. And if testator desired to give her the same interest in the residue of his estate he could have done so in language the same or similar to that used in the second paragraph of the will, or he could have made one provision cover his bounty to his wife, rather than dealing with the subject in two separate provisions, because he had already provided for his debts and funeral expenses and expenses of his last sickness, and there was no other bequest, legacy or devise provided for in the will aside from the cancelation of a debt owing to him by his half-brother. It is very clear to us that testator, by his will, having given all of his life insurance to his wife absolutely, as he plainly does in the second paragraph of the will, intended in the fourth paragraph to give her a life estate in the residue, with ample power of disposal and use to enable her properly to manage and use it, or so much of it, as she might desire for her own reasonable comfort and enjoyment as freely as if she were the absolute owner. It will not do to lose sight of the absolute gift provided for in the second paragraph of the will, nor the introductory clause of the fourth paragraph, viz., "Subject only to the foregoing provisions, I give and bequeath unto my said wife, all the rest and residue of my estate real, personal and mixed, wheresoever the same may be located or found, *for and during the full term of her natural life,*" and the language, "the same to be her own individual property to use, enjoy and dispose of as to her shall seem fit," must be considered, not only in the light of the very definite life estate created by the language which precedes it, but also by the gift over to his mother and half-brother, or their heirs, of whatever remainder of the property there might be at the death of his wife. In order to give mean-

ing to all of these provisions, the language following the creation of the life estate, viz., "the same to be her own individual property to use, enjoy and dispose of as to her shall seem fit," must be held to refer to the *manner of the use* and to the exercise of the power of disposal, as if it said: "She to use, enjoy and dispose of the same, for said purpose, as to her shall seem fit, the same as if it were her own individual property." This was clearly the intention of the testator, as we gather it from a consideration of the whole will, and to so interpret the instrument gives effect to all of its provisions, and does violence to none.

But having held that the wife took but a life estate in the residue, with power of disposal, how far does that power extend, and for what purposes, and in what manner may it be exercised? Under what circumstances, if at all, may the remaindermen invoke the aid of a court of equity to control the conduct of the life tenant with reference thereto?

It is evident that the purpose of the testator was to make ample provision for the support, care, comfort and enjoyment of his wife, in case she survived him. He did not intend to limit her merely to the use, nor to the bare income of the property in which the life estate was created. It is obvious that the added power of disposal was bestowed upon her to enable her freely to dispose of any or all of the property, and to convert it into other forms, by exchange or reinvestment, as her judgment might dictate, and to use the principal, or so much of it as she might reasonably need or desire, for her own maintenance, pleasure, enjoyment and comfort, and she was made the sole judge of the necessity and wisdom of any such transfers, and as to the extent to which it should be necessary or desirable for her to encroach upon the corpus of the property, for the objects and purposes for which the power was bestowed. In all these matters it is obvious that testator intended to bestow upon his wife wide latitude and a large degree of discretion, but we cannot hold that testator intended to place it in her power to dispose of the corpus of the estate, or any

substantial part of it, by gifts *inter vivos,* unless we are also prepared to hold that she can dispose of it by will, to whomsoever she pleases, which would imply a fee simple estate. Having construed the will to create in the wife but a life estate with power of disposal, we feel impelled to hold that any disposal made by her must be consistent with the objects and purposes testator had in mind in creating the life estate. *Burnet v. Burnet,* 244 Mo. 491; *Shapleigh v. Shapleigh,* 69 N. H. 577. We cannot think that, having created a life estate in express terms, and having provided a gift over of such portion of the principal as might remain at the death of the life tenant, he had any thought of placing it in her power, not only to deprive herself of its use and enjoyment, but, in addition, to place it all, or any substantial part of it, beyond the reach of the remaindermen by voluntary gifts or simulated and fraudulent transfers to her second husband, or to any one else. *Farlin v. Sanborn,* 161 Mich. 615. No degree of discretion consistent with the life estate, no power of disposal conferred upon the wife short of that which would imply the bestowal of the fee title upon her in the first instance, can justify a voluntary gift or transfer of all, or a substantial part of, the property to others, so as to destroy, or materially impair, the rights of the remaindermen therein. We cannot construe this will as giving to the life tenant any such power. In dealing with a somewhat similar question, Chief Justice Holcomb, in *Smullin v. Wharton,* 73 Neb. 690, cites *Cresap v. Cresap,* 34 W. Va. 310, and quotes therefrom the following language, which we think highly pertinent to the present inquiry: "If the widow should give away the whole of the estate to strangers, can any one deny that it would defeat the testator's manifest intention? The question gives the answer and that answer is decisive." In the exercise of the power of disposal the life tenant must act in good faith. *Bevans v. Murray,* 251 Ill. 603; *Strickland v. Strickland,* 271 Ill. 614; *Brookover v. Branyan,* 185 Ind. 1; *Martin v. Barnhill,* 56 S. W. (Ky. App.) 160; *Embry's Exrs. v. Embry's Devisees,* 102 S. W.

(Ky. App.) 239; *Trustees Presbyterian Church v. Mize,* 181 Ky. 567; *Rives v. Burrage,* 110 Miss. 789; *Tyson's Estate,* 191 Pa. St. 218; *Perkinson v. Clarke,* 135 Wis. 584.

At the suit of a remainderman a life tenant may be enjoined from committing waste. *Disher v. Disher,* 45 Neb. 100; 27 R. C. L. 1041. It is the duty of a life tenant to pay the general taxes assessed against the property in which the life estate is created. If this duty is neglected the remainderman has an appropriate remedy in equity. *Disher v. Disher, supra; Speich v. Tierney,* 56 Neb. 514; 17 R. C. L. 636.

"The tenant for life is entitled to the full use and enjoyment of the property, the only restriction upon this use being that the estate of those who are to follow him in possession shall not be permanently diminished in value by his neglecting to do that which an ordinarily prudent person would do in the preservation of his own property, or by doing those things which are not necessary to the full enjoyment of the particular estate, and which have the effect to diminish the value of the future estate. Because of this duty to preserve and protect the estate in remainder, his relation to the remainderman is to a certain extent *a fiduciary one and has frequently been termed an implied or quasi trusteeship.*" 17 R. C. L. 625, sec. 15. See, also, note to 64 Am. St. Rep. 920 (*Williamson v. Jones,* 43 W. Va. 562); *Smith v. Daniel,* 2 McCord Eq. (S. Car.) *143, 16 Am. Dec. 641.

We suppose that no one would contend that the life tenant in the instant case, merely because she has the power of disposal which was bestowed upon her by the will of her late husband, would have the right wilfully to destroy the property. If she cannot rightfully do that, how can it be said that she has the power to give all or any substantial part of it away? A life estate, coupled with a power of disposal and consumption of the corpus, cannot be held to confer upon the life tenant any such arbitrary and unbridled disregard of the rights of the remaindermen, unless we are prepared to hold that the added power of

disposal and consumption wipes out the distinction between a life estate and one in fee, and this we are not prepared to do. In the case *In re Estate of Meldrum,* 149 Minn. 342, the supreme court of Minnesota had occasion to construe the provisions of a will somewhat similar to that here under consideration, in connection with an inheritance tax question. It was there said:

"The fact that relator was given the right to change the character of the property in no way enlarged her interest in the estate. As we read and construe the will, she received a life estate in the property, plus the power to sell as she might think best, remainder to the daughter. The proceeds of the property remaining in her hands at the time of her death belong to the daughter, though by the terms of the will testator was entitled to the same for her support. *Bevans v. Murray,* 251 Ill. 603. While it is true, as contended by the state, that relator took more than a life estate, *no authority was given her to invade and deplete the corpus, unless necessary for her support.* Testator's purpose was to preserve the estate for his family. * * * While relator was not required to account to the court for proceeds of any sale, yet the fee vested in the daughter at the death of the testator *and the proceeds of any sale became the property of the daughter, subject to the life interest of relator therein, and at the relator's death the daughter would be entitled to the possession thereof.* The great weight of authority is that where an estate for life is expressly given, and a power of disposition is coupled with it, the fee does not pass to the life tenant under the devise, but only the naked power to dispose of the fee."

We have no doubt that any transfers by the life tenant in the present case, if made in good faith to actual purchasers for value, would convey good title, but the consideration received, whether in money or other property, would be held by her subject to the same limitations as the will attached to the life tenant's interest in the original property, and the remaindermen would have the same interest therein. *In re Oertle,* 34 Minn. 173; *Ackerman v. Gorton,*

67 N. Y. 63; *Cox v. Wills,* 49 N. J. Eq. 130; *Trustees Presbyterian Church v. Mize, supra; Cheshire v. Cheshire,* 37 N. Car. 569.

"Where testator's will gave to his widow the use and income of all his estate without using words of inheritance and gave the power to sell the property for her support, comfort, or enjoyment, or for any other purpose for which she may wish to spend money, and for investment, the power to sell being 'to sell and to convey and transfer by deed or other instrument,' with a gift over of all that remained undisposed of at her death, the widow did not take an absolute fee; since, the power of disposition being so limited as to exclude by implication any power of conveying the property by will, there was a restriction on the power of disposition inconsistent with an estate in fee simple." *Kemp v. Kemp,* 111 N. E. 673 (223 Mass. 32).

Among other things, the prayer of the petition asks for the appointment of a trustee to take charge of the property belonging to testator's residuary estate, or that defendants be required to give adequate security for its conservation for the use of plaintiffs at the time of the death of the life tenant. The general rule seems to be that where a will creates a life estate with added power of disposal and consumption of the corpus of the property for the use and support of the life tenant, and no security is called for by the will as a condition precedent to turning the property over to the life tenant, the court will not, in the first instance, at least, require the life tenant to give security for the preservation of the property for the benefit of the remainderman. 17 R. C. L. 628, sec. 18; *Scott v. Scott,* 137 Ia. 239, 126 Am. St. Rep. 277. But if we are to recognize that the remainderman, in such a case, has any interest in the property which courts of equity will protect from waste, fraud, profligacy, and wilful and reckless extravagance on the part of the life tenant, after coming into possession, then certainly the court not only has the power, but is under a solemn duty, to do all things necessary to afford such protection either by requiring

adequate security or appointing a new trustee. And such, we believe, is the recognized rule where a course of conduct is pursued by the life tenant after coming into possession of the property, which in any manner endangers the value of the remainder estate, or threatens seriously to deplete it or to reduce or impair its value. *In re Oertle, supra; Wiley v. Wiley,* 1 Neb. (Unof.) 350; *Langworthy v. Chadwick,* 13 Conn. 42; *Trustees Presbyterian Church v. Mize, supra; Chamberlain v. Husel,* 178 Mich. 1; *Howard v. Exrs. of Howard,* 16 N. J. Eq. 486; *Cheshire v. Cheshire, supra.*

We do not think that there is any merit in the contention that it appears from the face of the petition that the statute of limitations has run against the plaintiffs' cause of action. One of the allegations of the petition is:

"That the plaintiffs did not discover the fraud attempted by the defendants, Frances R. Wagner and Ernest O. Wagner, as above set out, until within two years prior to the filing of this petition."

This action is one for relief on the ground of fraud, which gives rise to a constructive trust under the circumstances alleged in the petition. It is therefore governed by the four-year limitation under section 7569, Rev. St. 1913. Under that section the action is not considered as accruing until the discovery of the fraud. The point was passed upon in *Hanson v. Hanson,* 78 Neb. 584. The syllabus in that case upon the point now being considered is:

"The statute of limitations begins to run in favor of a trustee *ex maleficio* of a constructive trust from the time of the discovery of the wrong or fraud, for the prevention of which the trust is imposed; but the statute does not begin to run in favor of the trustee of a resulting trust until such trustee, by some act or declaration, clearly repudiates his trust."

It follows from the foregoing considerations that the action of the lower court in sustaining the special appearance of defendant Frances R. Wagner is sustained, and the order and decree of the court is in all other things re-

versed and the cause is remanded for further proceedings in harmony with this opinion.

AFFIRMED IN PART, AND REVERSED IN PART.