Kathleen A. BEST, Personal Representative of the Estate of Alma A. Anderson, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 8:CV93–00313.

United States District Court, D. Nebraska.

May 12, 1995.

Daniel J. Duffy, Cassem, Tierney Law Firm, Omaha, NE, for plaintiff.

Paul W. Madgett, Daniel A. Morris, United States Attorney, Omaha, NE, Robert D. Metcalfe, U.S. Department of Justice, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

SHANAHAN, District Judge.

Before the court is filing no. 25, the "Motion for Summary Judgment" filed by the plaintiff, Kathleen Best ("Best"), Personal Representative of the Estate of Alma Anderson, Deceased. Best claims a refund for federal estate taxes and interest paid pursuant to a deficiency assessment by the Internal Revenue Service ("IRS"). For the refund, Best contends that (1) Alma Anderson did not possess a testamentary general power of appointment, but, instead, held a power limited by an ascertainable standard related to the health, education, support, or maintenance of a decedent, see 26 U.S.C. § 2041(b)(1)(A), and (2) Alma Anderson held the power with her son, John Anderson, who had a substantial interest in the property which was adverse to the exercise of the power granted to Alma Anderson. See 26 U.S.C. § 2041(b)(1)(C)(ii).

## BACKGROUND

On February 12, 1959, Alfred Anderson executed his "Last Will and Testament," and on January 19, 1967, died testate. In his will which was admitted to probate, Alfred Anderson appointed Alma Anderson, who was Alfred's surviving spouse, and their son, John Anderson, as trustees of the testamentary trust established by Alfred's will. Generally, the trustees, as empowered by the will, were authorized to distribute assets of

the trust to Alma Anderson. Upon Alma's death, the trust corpus was distributable to the Anderson children, Kathleen Best and John Anderson, or to their heirs (filing no. 26). Article IV(e) of the will contains the following:

I order and empower my Trustees to pay over to my wife, out of the principal of said trust, at any time and from time to time, such sum or sums as my Trustees in their sole and absolute discretion shall determine [sic] may be *reasonably necessary for her comfort, support and maintenance* [emphasis added].

On June 14, 1972, Alma Anderson and John Anderson qualified as trustees. However, on August 18, 1982, John Anderson died. After Alma Anderson was discharged as trustee on September 1, 1983, the Omaha National Bank was appointed as the successor trustee (filing no. 26). Alma Anderson died on March 26, 1989.

Certain material facts are uncontroverted.

In December 1989, Best, as personal representative of Alma Anderson's estate, paid $242,761 in federal estate taxes (filing no. 7). On November 25, 1992, the IRS notified Best that a deficiency in payment of taxes was assessed against Alma Anderson's estate for $381,007 plus $122,995 in interest (filing no. 7). In calculating this deficiency, the IRS included in Alma Anderson's gross estate the value of the corpus of the Alfred Anderson testamentary trust, namely, shares of stock in Anderson Equipment Company valued at $944,390 (filing no. 7). On October 15, 1992, Best paid the IRS $434,030 which included the deficiency assessment and interest. Subsequently, on November 6, 1992, Best also paid the IRS an additional $69,976 in interest, bringing the total payment to $504,006 concerning the assessed deficiency which was thus satisfied by Best. On February 10, 1992, Best filed a "Claim for Refund and Request for Abatement" with the IRS (filing no. 7). On April 22, 1993, the IRS disallowed Best's claim on the ground that Alma Anderson held a general power of appointment over the trust corpus rather than a power of appointment limited by an ascertainable standard or a power exercisable in conjunction with a person with an adverse

interest. The IRS, therefore, reaffirmed its position that the corpus of Alfred Anderson's testamentary trust was an asset included in Alma Anderson's gross estate (filing no. 1; exhibit "D").

For federal estate tax purposes, the gross estate of a decedent includes "any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942. . . ." 26 U.S.C. § 2041(a)(2). As expressed in 26 U.S.C. § 2041(b):

(1) General power of appointment.—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

Treas.Reg. § 20.2041–1(c)(2) states:

(2) Powers limited by an ascertainable standard. A power to consume, invade, or appropriate income or corpus, or both, for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent is, by reason of section 2041(b)(1)(A), not a general power of appointment. A power is limited by such a standard if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them). As used in this subparagraph, the words "support" and "maintenance" are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's "support", "support in reasonable comfort", "maintenance in health and reasonable comfort", "support in his

accustomed manner of living", "education, including college and professional education", "health", and "medical, dental, hospital and nursing expenses and expenses of invalidism". In determining whether a power is limited by an ascertainable standard, it is immaterial whether the beneficiary is required to exhaust his other income before the power can be exercised.

Best contends that the testamentary trust under Alfred Anderson's will conferred an invasionary power limited by an ascertainable standard so that the corpus of the testamentary trust estate is excludable from the gross estate of Alma Anderson. On the other hand, the United States contends that Alma Anderson had a general power of appointment over the corpus of the trust; hence, the value of the corpus was includable in Alma Anderson's gross estate.

Thus, the question before the court is whether the Internal Revenue Service properly included the value of the trust corpus in Alma Anderson's gross estate.

## ANALYSIS

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 Although federal law dictates how a decedent's estate will be taxed, "state law controls in determining the nature of the legal interest which the taxpayer had in the property or income sought to be reached by the statute." *Morgan v. Commissioner,* 309 U.S. 78, 82, 60 S.Ct. 424, 426, 84 L.Ed. 585 (1940). See also *Vissering v. Commissioner of Internal Revenue,* 990 F.2d 578, 580 (10th Cir.1993): "We look to state law ... to determine the legal interests and rights created by a trust instrument, but federal law determines the tax consequences of those interests

and rights;" *Brantingham v. U.S.,* 631 F.2d 542, 545 (7th Cir.1980): "The determination as to what legal rights and interests are created by a specific instrument is a question of state law." Therefore, Nebraska law determines whether the language in Alfred Anderson's will, namely, "reasonably necessary for [Alma Anderson's] comfort, support and maintenance," creates a general power of appointment, subjecting such power to federal estate taxation.

 Also, the court keeps in mind that, for the purpose of federal estate taxation, 26 U.S.C. § 2041(a)(2) pertains to "any property with respect to which the decedent has at the time of his death a general power of appointment." A review of several decisions discloses that both a life estate and an interest in a trust corpus may be "property" for the purposes of § 2041(a)(2). See *Brantingham,* supra (7th Cir.1980) (decedent's power to consume a life estate was limited by an ascertainable standard pursuant to 26 U.S.C. § 2041(b)(1)(A)); *First Virginia Bank v. U.S.,* 490 F.2d 532 (4th Cir.1974) (decedent's power to consume life estate was not limited by an ascertainable standard pursuant to 26 U.S.C. § 2041(b)(1)(A); *Vissering,* supra (decedent's power to consume trust corpus was limited by an ascertainable standard pursuant to 26 U.S.C. § 2041(b)(1)(A)).

Although it appears that the Supreme Court of the State of Nebraska has not yet expressed an opinion whether a power to invade the corpus of a trust may be limited by an ascertainable standard, the Nebraska Court has addressed the question whether a power to invade a life estate is limited by an ascertainable standard. By analogy, the analysis concerning a life estate applies to the question in the present case because the dispositive question before the court is not the specific type of property that is subjected to an invasionary power, but, instead, the nature of the power which is exercisable, that is, a general power of appointment versus a power limited by an ascertainable standard.

In *Estate of McDonald,* 194 Neb. 221, 231 N.W.2d 332, 333 (1975), Edward McDonald, by his will, granted his wife, Gertie McDonald, a life estate in all his property with a remainder to his children. The specific tes-

tamentary provision in Edward McDonald's will is as follows:

"I give, devise and bequeath to my beloved wife, Gertie McDonald, the use, income and profit of all my property, both real and personal, and wherever situated, during her life time, but provide that all of said property is to be turned over to her without restriction and she shall have the right to sell and convey the same without permission of any court, as though she was the absolute owner, and re-invest the proceeds, and use so much of the income and principal thereof *as may be necessary to provide her with a living and the usual comforts had by persons in her station of life.*" (emphasis supplied)

231 N.W.2d at 333.

Gertie McDonald died subsequent to her husband's death. Consequently, when Gertie McDonald died, the question was whether the proceeds from Gertie McDonald's sale of real estate which had been subject to her life estate constituted property taxable under Nebraska law in reference to a power of appointment, namely, Neb.Rev.Stat. § 77–2008.03 (Reissue 1986): "Whenever any person or corporation shall be given a power of appointment over any property ... such power of appointment shall be deemed a transfer of the interest in the property...."

The Supreme Court of Nebraska construed the testamentary language concerning the McDonald life estate to mean that the decedent granted Gertie McDonald "a life estate in all his [the decedent's] property, with a power to dispose of the corpus of the estate for her support and maintenance," *id.* 231 N.W.2d at 333, and "the power to dispose of the property as she deemed necessary to provide for her maintenance and her customary comforts and necessities of life." *Id.* 231 N.W.2d at 334. Also, the *McDonald* court observed: "The power to sell in order to satisfy [Gertie McDonald's] needs for maintenance and support could not be converted into a power to create an independent title in the proceeds of the sale in herself and emasculate and destroy the clear intent to vest the remainder equally in the children." *Id.* 231 N.W.2d at 334. Finally, the court concluded in *McDonald*:

[T]he language of Edward's will, and the appropriate authorities, is that he intended to convey the power to sell and convert the property into money for the maintenance and support of his widow life tenant.

. . . . .

We are aware that underlying the dispute in this case is the contention and dispute as to the distribution of the tax burden under the state and federal laws. We do not discuss this question. Sufficient it is to say that the conclusions reached herein are harmonious with the applicable inheritance tax statute, section 77–2008.03, R.R.S.1943, and the applicable provisions as to powers of appointment in the Internal Revenue Code. S. 2041(b)(1), I.R.C.

We therefore hold that the District Court was in error in finding that the proceeds of the sale were a part of Gertie McDonald's estate, and in accordance with this interpretation of the will and the decision herein, the cause is remanded to the District Court with directions to enter a decree finding that the proceeds are a part of the estate of Edward McDonald; and the assessment of the inheritance tax consequently is reduced accordingly.

Thus, in *McDonald,* the Nebraska Supreme Court concluded that use of the devised life estate "as may be necessary to provide [Gertie McDonald] with a living and the usual comforts had by persons in her station of life" did not constitute property in the form of a general power of appointment that is subject to death taxes under Nebraska law. Although not expressly stated in *McDonald,* recognition of a power "limited by an ascertainable standard" is evident from the court's awareness and explicit acknowledgement that its definition or characterization of the property interest in *McDonald* was "harmonious" with the requirements of 26 U.S.C. § 2041(b)(1)(A) for excludability from a decedent's gross estate.

*McDonald* is consistent with the earlier Nebraska decision, *Abbott v. Wagner,* 108 Neb. 359, 188 N.W. 113, 114 (1922), which also involved the testamentary creation of a surviving spouse's life estate "for and during the full term of her natural life, the same to

be her own individual property to use, enjoy, and dispose of as to her shall seem fit." On the surviving spouse's death, the remainder went to the testator's children. In *Abbott*, the Nebraska Supreme Court held that the phrase "to use, enjoy and dispose of as to her shall seem fit" meant "maintenance, pleasure, enjoyment and comfort." *Id.* 188 N.W. at 121. See also *Attebery v. Prentice*, 158 Neb. 795, 65 N.W.2d 138, 142 (1954) (testamentary language which granted the widow the right to dispose of the corpus of a life estate "at any time when it may be advantageous or profitable to do so or when it becomes necessary for her support" was construed as a limited invasionary right).

The language of the will in *McDonald* is substantially similar to the language in Alfred Anderson's will, namely, Alma Anderson's power to invade the trust if "reasonably necessary for her comfort, support, and maintenance." Both wills used a word or phrase relating to maintenance or support, that is, in *McDonald*, "living" was joined by the conjunction "and" to the phrase "usual comforts," whereas in the present case, "reasonably necessary for her comfort" appears conjunctively in the series "comfort, support and maintenance."

In relation to the plain language of 26 U.S.C. § 2041(b)(1)(A) namely, "a power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent," the court notes Treas.Reg. § 20.2041–1(c)(2), which states that:

"[S]upport" and "maintenance" are synonymous and their meaning is not limited to the bare necessities of life. A power to use property for the comfort, welfare, or happiness of the holder of the power is not limited by the requisite standard. Examples of powers which are limited by the requisite standard are powers exercisable for the holder's "support," "support in reasonable comfort," "maintenance in health and reasonable comfort," [and] "support in his accustomed manner of living."

Also, in construing the language of Alfred Anderson's will, this court recognizes:

"The cardinal rule concerning a decedent's will is the requirement that the intention of the testator or testatrix shall be given effect, unless the maker of the will attempts to accomplish a purpose or to make a disposition contrary to some rule of law or public policy.... To arrive at a testator's or testatrix's intention expressed in a will, a court must examine the decedent's will in its entirety, consider and liberally interpret every provision in a will, employ the generally accepted literal and grammatical meaning of words used in the will, and assume that the maker of the will understood words stated in the will." *In re Estate of Hannan*, 246 Neb. 828, 523 N.W.2d 672, 675 (1994) (quoting *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251, 256 (1987)).

In *Hannan*, the Nebraska Supreme Court added: "When intention is expressed in clear language used in a testator's will, a court must give full force and effect to the testator's intention so expressed." *Id.*

As directed by Alfred Anderson's words in establishing the testamentary trust, the trustee could not use the trust estate solely for Alma Anderson's comfort, but could use the assets of the trust "reasonably necessary" for her "comfort and support" as well as "comfort and maintenance." Thus, language in the Alfred Anderson testamentary trust has a strikingly and essential similarity to the power to "support in reasonable comfort" and "maintenance in health and reasonable comfort," powers which are explicitly approved in Treas.Reg. § 20.2041–1(c)(2) for excludability from a decedent's gross estate.

Courts have held that use of the word "comfort," when used conjunctively with the other specified purposes permitting excludability from a decedent's gross estate, does not destroy an invasionary power limited by an ascertainable standard in reference to "health, education, support, or maintenance of the decedent" pursuant to 26 U.S.C. § 2041(b)(1)(A). For instance, in *Vissering v. Commissioner of Internal Revenue*, 990 F.2d 578 (10th Cir.1993), the court examined the testamentary language in a trust which allowed an invasion "required for the continued comfort, support, maintenance, or edu-

cation of said beneficiary." The trust assets, according to a decision by the United States Tax Court that was under review, were includable in the Estate of Norman Vissering, the deceased beneficiary of the trust. As observed by the Circuit Court in *Vissering:* "The appeal turns on whether decedent held powers permitting him to invade the principal of the trust for his own benefit unrestrained by an ascertainable standard relating to health, education, support, or maintenance." 990 F.2d at 578. In *Vissering,* the court also stated:

> "The Internal Revenue Service (IRS) and the Tax Court focused on portions of the invasion provision providing that the trust principal could be expended for the 'comfort' of decedent, declaring that this statement rendered the power of invasion incapable of limitation by the courts."
>
> ... The instant language states that invasion of principal is permitted to the extent "required for the continued comfort" of the decedent, and is part of a clause referencing the support, maintenance and education of the beneficiary. Invasion of the corpus is not permitted to the extent "determined" or "desired" for the beneficiary's comfort but only to the extent that it is "required." Furthermore, the invasion must be for the beneficiary's "continued" comfort, implying, we believe, more than the minimum necessary for survival, but nevertheless reasonably necessary to maintain the beneficiary in his accustomed manner of living. These words in context state a standard essentially no different from the examples in the Treasury Regulation, in which phrases such as "support in reasonable comfort," "maintenance in health and reasonable comfort," and "support in his accustomed manner of living" are deemed to be limited by an ascertainable standard. Treas.Reg. § 20.2041–1(c)(2).

990 F.2d at 579–81. See, also, *Brantingham,* supra, at 545 (power to invade life estate if necessary for "maintenance, comfort and happiness" is an invasionary power limited by an ascertainable standard); *Hunter v. U.S.,* 597 F.Supp. 1293 (W.D.Penn.1984) (trustee's power to invade trust corpus "for the comfortable support and maintenance of any beneficiary therein, or should any emergency arise" is an invasionary power limited by an ascertainable standard); *Toledo Trust Co. v. U.S.,* 1987 U.S.Dist. LEXIS 16111 (N.D.Ohio 1987) (power to invade trust corpus for "care, comfort and support" is an invasionary power limited by an ascertainable standard).

Also, this court believes that the Supreme Court of the State of Nebraska, if presented with this case at hand, would hold that a trust document, permitting invasion of the trust's principal or corpus when "reasonably necessary for [Alma Anderson's] comfort, support and maintenance," does not create a general power of appointment, but does create an invasionary power "limited by an ascertainable standard relating to the health, education, support or maintenance" of Alma Anderson consistent with 26 U.S.C. § 2041(b)(1)(A) and, thus, permits excludability from Alma Anderson's gross estate.

Therefore, the court finds and concludes that Alma Anderson did not have a general power of appointment concerning the assets of the testamentary trust created by Alfred Anderson's will. Consequently, the value of the trust corpus under Alfred Anderson's will is excluded from the gross estate of Alma Anderson, Deceased. For that reason, the plaintiff, Kathleen A. Best, as personal representative of the Estate of Alma Anderson, Deceased, is entitled to a refund of the estate tax and interest paid to the Internal Revenue Service concerning the corpus of the trust included in Alma Anderson's gross estate. Hence, Kathleen A. Best, as personal representative, is entitled to a refund of the estate tax and interest paid pertinent to the trust corpus included in Alma Anderson's gross estate and, thus, is entitled to a refund in the amount of $504,006 which is the principal and interest paid by the Estate of Alma A. Anderson, Deceased, concerning the deficiency assessed by the IRS for federal estate taxes.

Because the court has determined that Alma Anderson held a power of appointment limited by an ascertainable standard, it is unnecessary to decide whether the corpus of the trust included in Alma Anderson's estate

should have been excluded pursuant to 26 U.S.C. § 2041(b)(1)(C)(ii).

Finally, Kathleen A. Best has requested an award of costs in the present action, including an attorney fee. Whether Best is entitled to an attorney fee and costs pursuant to 26 U.S.C. § 7430(a)(2) will be considered upon the appropriate application in accordance with the Federal Rules of Civil Procedure and the rules of this court.

THEREFORE, IT IS ORDERED:

1. That filing no. 25, the "Motion for Summary Judgment" filed by the plaintiff, Kathleen A. Best, is granted;

2. That the plaintiff, Kathleen A. Best, as Personal Representative of the Estate of Alma A. Anderson, Deceased, shall have judgment against the defendant, United States of America, for $504,006 plus interest at the applicable rate pursuant to 26 U.S.C. §§ 6611 and 6621 pertaining to the judgment; and

3. That the matter of an attorney fee and costs allowable to Kathleen A. Best pursuant to 26 U.S.C. § 7430(a)(2) will be considered upon the appropriate application in accordance with the Federal Rules of Civil Procedure and the rules of this court.

DATED this 12th day of May, 1995.