Evans vs. Kemp.

EVANS, Administrator, Appellant, vs. KEMP, Respondent.

*September 7 — September 26, 1899.*

*Wills: Construction: Life estate: Judgment: Appeal: Costs.*

1. A will, after giving to testator's wife "all my estate, both real and personal, during her natural life," proceeded: "I also devise and bequeath to her all rents, interest on money, and profits that may accumulate from any source, to be used by her for her special benefit during her natural life." The donation to the remaindermen was confined to "my estate." *Held*, that the gift of an absolute life estate in all the property was not curtailed by the subsequent provision, and that all accumulations of the income of the estate became the separate property of the widow.

2. Where, in an action at law against an executor, plaintiff has judgment not only for all the property which he is entitled to recover in such an action but also for further relief as to other property for which the testator's estate would have been liable in some other form of procedure, such judgment will not be reversed for that reason on an appeal by the plaintiff.

3. Where in an action at law plaintiff recovers judgment responsive to his complaint, though not to the full extent of his claim, the fact that the court includes in the judgment some further relief, equitable in its character, cannot deprive him of his statutory right to costs.

APPEAL from a judgment of the circuit court for Grant county: GEO. CLEMENTSON, Circuit Judge. *Modified and affirmed.*

Joseph Kemp died testate in 1877, leaving, according to the inventory of his estate, securities to the extent of $4,100; live stock, farm implements, and crops to the extent of $429; wearing apparel, ornaments, and household furniture to the extent of $210. By his will he made his widow, Sarah Kemp, his executrix, to which place she duly qualified; and he further bequeathed, after the payment of debts: "To my beloved wife, Sarah Kemp, all my estate, both real and personal, during her natural life. I also devise and bequeath to her all rents, interest on money, and profits that may accumulate from any source, to be used by her for her especial benefit during her natural life." After her death he devised to the defendant, *Joseph J. Kemp*, all real estate and personal chattels, and $800 in money, and divided the residue of his estate equally between his other son, John W. Kemp, and his daughter, Mary Jane Barron.

The widow went into possession of all the property, inclusive of the eighty-acre farm, in which it appears, somewhat indefinitely, that she had a half interest in her own right. She filed her inventory, but never settled the estate. She continued to live upon the farm and used the personal property until her death, which occurred about 1896,— nineteen years later. During the first four years of this period the defendant, *Joseph J. Kemp*, being a minor, worked on the farm for her. After his majority, about 1881, she leased the farm to him without rent, except her own residence and maintenance thereon, and the keep of any stock she might

have, and payment of taxes. All of the chattels derived from her husband she used up by ordinary use before her death, and all of the securities she had collected, except a single note and mortgage for $1,000, made by John Bennett, on which the interest had been paid regularly up to the time of her decease. She left a will appointing her son *Joseph J.* executor, and dividing her property among her three children and their children in proportions differing from those specified in her deceased husband's will. *Joseph J. Kemp* qualified as her executor, and took possession of all property in her possession at the time of her death, including said Bennett note and mortgage.

The plaintiff, having been appointed administrator *de bonis non* of the estate of Joseph Kemp, deceased, brought an action in detinue against the defendant, demanding recovery of all the personal property coming to his possession from his mother, describing it as in the inventory which he had filed as executor; the contention being that all of such personal property was proceeds and accumulation of the property left to Sarah Kemp, and reverted to the estate of Joseph Kemp upon her decease.

The circuit court held that the will conveyed to her a life estate in all the property of her husband; that the property left by her at her decease, while largely proceeds and accumulation of the property so received by her, also included accumulations from property which belonged to her independently, but that all accumulations of income became her separate property and did not belong to the estate of Joseph Kemp. The court further held that the Bennett note did revert, and also that her estate would be liable to his estate for the balance of the principal of the securities received by her, namely, $3,100, and rendered judgment that plaintiff recover the Bennett note and enough other property to make up the sum of $4,100, with interest at the rate of six per cent. from the date of the death of Sarah Kemp, without

costs to either party. From this judgment the plaintiff appeals, and the defendant does not.

*T. L. Cleary*, for the appellant.

For the respondent there was a brief by *Lowry & Clementson* and *W. J. Brennan*, and oral argument by *Geo. B. Clementson*.

DODGE, J. The appellant contends that he was entitled to recover all of the personal property left by the deceased, Sarah Kemp, for the reason that by her husband's will she was given only the right to support out of the income of his property, and that all accumulations thereof must revert at the time of her death, and that the property which she had at the time of her decease had been acquired with the proceeds and accumulations of property left by him. This being an action for specific articles, and not for an accounting or to charge the estate of the deceased with misconduct by her as a trustee or an executor, it might well be disposed of upon failure of proof that any specific article, always excepting the Bennett note, had been acquired exclusively with moneys of her husband's estate, income of her own having been mingled therewith. *Bromley v. C., C., C. & St. L. R. Co.* 103 Wis. 562; *Nonotuck S. Co. v. Flanders*, 87 Wis. 237; *Burnham v. Barth*, 89 Wis. 362.

But, independently of this ground, we have no doubt that the construction given to the will by the circuit court was the correct one. It is apparent from the intrinsic evidence that the will was prepared by an illiterate person. It, in terms, first gives an absolute life estate in all property, and the additional language used does not evince any purpose to curtail this gift, but, rather, to add to it. We think it apparent that the thought in the mind of the testator was simply to amplify the giving of the actual personal property by declaring that he intended, also, the enjoyment of the income thereof. A purpose such as the appellant con-

tends for — of providing for the widow's support, and retaining to his estate whatever was not needed therefor — would almost inevitably have involved authority to the widow to use of the principal as well as of the income; but, clearly, no such grant is made by the will, and we think no such scheme was in his mind. Again, if the testator had actually in contemplation the accumulation of a fund from the income to enhance and increase his estate, it is hardly conceivable that such purpose should not have been evinced in the donation to the remaindermen, which, however, is confined to " my estate." We think this expression, which is the same used to describe what is given for life to the widow, would not have been used had he meant them to share not only in the estate which he left at his death but in any accumulations of income thereof which might arise in the hands of his widow. We draw that inference partly from the evidences of inaccurate and uncertain understanding of the meaning of terms apparent throughout the will, and feel sure that neither the testator nor the scrivener would have felt safe to rely on the expression " my estate " to indicate what might thereafter be accumulated by the widow.

From this conclusion it necessarily results that none of the specific assets coming to the defendant from his testatrix, and described in the complaint, except the John Bennett security, belonged specifically to the estate of Joseph Kemp, deceased. None of them had had existence during his lifetime, and none of them came to the widow from him. The plaintiff could not properly, therefore, recover in this action anything but the Bennett note and mortgage. It is, however, undoubtedly true that the estate of Sarah Kemp would have been liable for the principal of the $3,100 worth of securities collected by her, in some form of procedure; and, as the defendant raises no objection to the fact that recovery therefor is allowed in this suit, the judgment need

not be reversed for that reason. Inasmuch as the plaintiff was entitled to recover nothing but the Bennett note, the judgment, so far as it gives him anything else, is in excess of his rights, and not prejudicial to him, and therefore cannot be successfully assailed by him. *Waterhouse v. Freeman,* 13 Wis. 339; *Smith v. Hoyt,* 14 Wis. 252; *Dousman v. Wis. & L. S. M. & S. Co.* 40 Wis. 418.

On the question of costs, however, the judgment is erroneous. Plaintiff, in an action at law, recovered judgment responsive to his complaint, to the amount of $1,000. His right to costs is conferred by statute (sec. 2918, Stats. 1898), and the court had no discretion on the subject. The fact that the court included in the judgment some further relief as to other property, perhaps equitable in its character, cannot deprive plaintiff of his statutory rights. The judgment should be modified so as to award plaintiff costs, to be taxed under the statute. In this court appellant will recover as costs only fees of the clerk of this court, and $25 for printing.

*By the Court.*— Judgment modified so as to award plaintiff taxable costs in circuit court, and, as so modified, it is affirmed.