JAMES ROLAND PERIGO ET AL., APPELLANTS, V. CHRISTENA MARY PERIGO, APPELLEE.

64 N. W. 2d 789

Filed June 4, 1954. No. 33489.

*Bertrand V. Tibbels,* for appellants.

*Townsend & Youmans,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs James Roland Perigo and Lucille Broshears, assignees of Earl Perigo, Alice Lowell, Lucy Houghland, Mary Smith, and Homer Perigo, having the alleged rights of remaindermen, brought this declaratory judgment action against defendant Christena Mary Perigo, testator's surviving widow, seeking construction of the will of Eugene Perigo who died testate on March 12, 1952, in Scotts Bluff County, and to obtain injunctive together with general equitable relief.

The following is conceded: On April 19, 1952, the will executed on December 19, 1951, was duly admitted to probate and defendant was appointed and qualified as executrix in conformity therewith, without objection; as such, she took possession of all the real and personal estate of testator and in that capacity has attempted.

to and negotiated a sale of part of such property; and that Earl Perigo, Alice Lowell, Lucy Houghland, Mary Smith, and Homer Perigo are the only heirs at law of testator.

Plaintiffs in their petition alleged that the personal property and income from the realty of the estate was more than sufficient to supply defendant with the usual luxuries and customary necessaries, and sale of the property or any part of it or the use of the principal of the estate was wholly unnecessary for defendant's support and maintenance or preservation of the estate, and unless defendant was enjoined from doing so, the estate would be unnecessarily sold, conveyed, or wasted. Defendant's answer denied those allegations and alleged that sale of a portion of the realty was necessary in order to pay claims against the estate together with costs and expenses of administration, and other necessary charges.

Plaintiffs also alleged that it was the intention of testator in his will: (1) To confer upon defendant only the use of so much of the income from the property during her lifetime as should be necessary for defendant's comfort, support, and maintenance in accord with standards established by testator during his lifetime; (2) that he gave defendant the power of sale only for the purpose of preserving the estate, or if the income should be insufficient to maintain her as aforesaid; and (3) that the proceeds of any property sold by defendant should descend to plaintiffs and no part of the estate ever descend to the heirs of defendant, but that all property which was not necessary for her maintenance as aforesaid should descend to plaintiffs, his heirs, the remaindermen named in the second paragraph of his will. The answer of defendant denied those allegations, alleged that terms of the will were clear and unambiguous, requiring no construction, and prayed for dismissal of plaintiff's petition.

After hearing, whereat evidence was adduced in the

form of admissions and stipulations together with certain related exhibits, the trial court rendered its judgment construing the will in some material respects contrary to plaintiffs' contentions, denying any injunctive relief, and taxing costs to plaintiffs. Therefrom plaintiffs appealed to this court, separately assigning that the trial court erred in making certain findings and construing the will in several respects hereinafter discussed, and erred in denying injunctive relief. We conclude that the assignments should not be sustained. In that connection also, it should be noted that defendant did not cross-appeal.

Insofar as important here, testator's will provided: "FIRST, I direct that all my just debts, including the expenses of my last illness and burial and the expenses of administering my estate, shall be paid by my executrix as soon after my death as may be practicable.

"SECOND, All the rest and residue of my property of every kind and nature wherever situate and of which I may die seized or possessed or of which I may have the power of disposal at the time of my death, I give, devise, and bequeath unto my beloved wife, Christena Mary Perigo, for her use during her natural life, hereby giving unto my said wife the power of sale of any and all of said property of every kind and nature and wherever situate, and the use, disposition, expenditure, application, and investment, of the proceeds of any such sale as her own separate property; provided, however, that upon the death of my said wife, if any of said property shall not have been sold by her during her lifetime, then after the payment of the expenses of her last illness, her funeral charges, the expense of administration of her estate, and the payment of all debts which she may have contracted, all from the part of said property which she may not have sold during her lifetime, I give, devise, and bequeath the rest and residue thereof as follows, to-wit;

"A. One-third thereof to my sister, Alice Lowells, of

Boonville, Indiana, if she be living at the time of the death of my said wife, otherwise to the heirs at law of my said sister, Alice Lowells, share and share alike, who may be living at the time of the death of my said wife.

"B. One-third thereof to my brother, Earl Perigo, of Marion, Kentucky," in like manner as aforesaid.

"C. One-third thereof as follows, to-wit:

"1. One-third of said one third to my niece, Lucy Houghland, of Evansville, Indiana," also in like manner.

"2. One-third of said one-third to my niece, Mary Smith, of Boonville, Indiana," also in like manner.

"3. One-third of said one-third to my nephew, Homer Perigo, of Boonville, Indiana," also in like manner.

"THIRD, I hereby nominate and appoint my beloved wife, Christina Mary Perigo, as and for executrix of this my last will and testament, hereby giving unto my said executrix full power of sale of any and all property, of every kind and nature, whereever (sic) situate without leave or license of any court."

As we view it, there is no controverted material issue of fact, and no latent ambiguity appears in the will. The ambiguity, if any, is entirely patent, and extrinsic evidence was not admissible or controlling in a determination of the intention of testator.

In Jacobsen v. Farnham, 155 Neb. 776, 53 N. W. 2d 917, 33 A. L. R. 2d 543, this court held: "Extrinsic evidence is not admissible to determine the intent of the testator as expressed in his will unless there is a latent ambiguity. Such evidence is not admissible to determine the intent of the testator where the ambiguity is patent and not latent.

"A patent ambiguity is one which appears upon the face of the instrument, which must be removed by construction according to settled legal principles and not by evidence, and the intention of the testator is to be determined from the four corners of the will itself."

As recently as Kramer v. Larson, *ante* p. 404, 63 N. W.

2d 349, this court held: "A patent ambiguity in a will must be removed by interpretation according to legal principles and the intention of the testator must be found within the four corners of the will.

"In searching for the intention of the testator the court must examine the entire will, consider all its provisions, give words their generally accepted literal and grammatical meaning, and indulge the presumption that the testator understood the meaning of the words used.

"The intention of the testator as determined from the will must be given effect if it is not inconsistent with any rule of law.

"The intention within the ambit of this rule is the one the testator expressed by the language of the will and not an entertained but unexpressed intention."

Also, as early as Hill v. Hill, 90 Neb. 43, 132 N. W. 738, 38 L. R. A. N. S. 198, this court held: "It is the duty of the courts in construing a will to carry into effect the true intent of the testator, so far as that intent can be collected from the whole instrument, if not inconsistent with the rules of law; but the law imputes to the testator a knowledge of those rules, and he will be presumed to have executed his will with an understanding that the objects of his bounty may demand their portions in accordance therewith."

Part "SECOND" of the will here involved is that portion which must be construed in the light of language used therein and that appearing in related parts "FIRST" and "THIRD" heretofore set forth. Preliminary to a discussion thereof and determination of plaintiffs' contentions with regard to injunctive relief, there are certain basic facts which we summarize for clarity and convenience. Defendant was the second wife of testator. They were married March 27, 1932, following the death of testator's first wife in 1930, without children surviving. Also, there were no children the issue of testator's marriage to defendant. At the time of their marriage defendant owned an almost new Chevrolet auto-

mobile which was thereafter used by the parties, some household goods of no great consequence, and a savings account of about $100. Since that time defendant has not inherited or acquired any property except that acquired from and accumulated with testator during the 20 years of their marriage.

Prior to testator's death on March 12, 1952, he had been ill for a period of about 1½ years. At the time of his death he was 79 years of age, and at the time of this trial defendant was 69 years of age. As disclosed by the inventory of his estate, testator at the time of his death owned two described farms in Scotts Bluff County worth $46,200, together with money and personal property worth $4,529.67, making a total estate of $50,729.67. Concededly, there was also an oil and gas lease upon which annual delay rentals of $298.50 were being paid, which was not, for some reason unimportant here, included in the inventory. As executrix and not in her individual capacity, defendant had on December 24, 1952, entered into a written agreement to sell part of the land for $14,000, of which $1,000 was paid in cash, with $13,000 due and payable on or before March 1, 1953, dependent upon prescribed conditions which are unimportant here. In such agreement defendant reserved to herself an undivided one-half of the oil, gas, and mineral rights in such land during her lifetime, but the purchaser was to receive oil and gas lease delay rentals due after March 1, 1953. With regard to such sale agreement it will be observed that part "THIRD" of testator's will nominated and appointed defendant as executrix of his estate, giving her as such "full power of sale of any and all property, of every kind and nature, wherever situate without leave or license of any court." The sale agreement was thus entered into by defendant not in her individual capacity but as executrix under and by virtue of such power which is not here an issue or challenged by plaintiffs. Further, in any event it may be said that

plaintiffs failed to establish any fraud or lack of necessity for such sale.

On December 20, 1951, the day after execution of his will, testator appointed defendant his attorney in fact giving her wide and general authority. Prior to his death, testator also gave defendant a bill of sale to all his farming equipment which defendant sold for $7,000, of which $2,700 has been paid, with the balance of $4,300 evidenced by a promissory note. On January 10, 1952, defendant and testator sold one of his farms for $21,100 out of which $17,500 was paid for a home in Scottsbluff, with title taken only in defendant's name. There they lived until testator's death.

Exhibits appearing in the record disclose an accounting by defendant for all money deposited in the bank by her, giving the source thereof and all checks paid out by her, reciting to whom and for what purpose they were paid, from March 12, 1952, to June 30, 1953; all money received by defendant as executrix, giving the source thereof, from March 21, 1952, to November 3, 1952; all money received in defendant's individual capacity as devisee, giving the source thereof, from September 23, 1952, to June 27, 1953; all money expended by defendant upon real property of the estate, reciting to whom paid and for what purpose, from March 12, 1952, to June 26, 1953, in addition to estate payments theretofore listed; and all money paid by defendant from funds belonging to the estate and out of her own personal funds for expenses of administration, claims filed against the estate, debts owing by testator at the time of his death which were legitimate claims against the estate, and expenses incurred in handling the estate from March 12, 1952, to December 22, 1952, reciting to whom paid, and for what purpose, for a total of $4,780.07, and listing debts and obligations still due and unpaid, aggregating $5,343.26, in addition to administrative costs yet unpaid, and executrix fees not yet ascertained or paid.

The trial court specifically found in its decree: "* * *

that the defendant, Christena Mary Perigo, has attempted to sell and has negotiated for the sale of a part of the real estate comprising a part of said estate, and that such a sale was and is necessary, and that the defendant has not sold or conveyed any of said estate, and has not wasted any of said estate, nor been guilty of any fraud in connection therewith." The evidence clearly sustained such finding. There is no evidence which could sustain any contrary conclusion or support injunctive relief with relation thereto.

Further, in the trial court's finding, it is said: "The court further finds that it was not the intention of the testator that Christena Mary Perigo should have the power to dispose of the corpus of the estate, *or any substantial part of it,* by gifts inter vivos, nor that she should have the power of disposing of any of the corpus of the estate by will." (Italics supplied.) Plaintiffs argued in their first assignment that the italicized words aforesaid were erroneously included in such finding. The answer is that even if erroneously included, it was without prejudice to plaintiffs, since such language does not appear in paragraph V of the judgment itself, hereinafter set forth and discussed, which is controlling. Therefore, plaintiffs' contention has no merit, and requires no further discussion.

Plaintiffs' second assignment argued that such finding was also erroneous in failing to find that it was the intention of testator that defendant should not have the power to dispose of *the income of the estate* as well as the *corpus* thereof by gift inter vivos or by will. We find no merit in such contention, and the reasons therefor will be found in the discussion of plaintiffs' third related assignment.

The judgment of the trial court which construed the will and adjudicated testator's intent is divided into five separate Roman numeral paragraphs. They will be separately set forth and disposed of in the light of

plaintiffs' several separate contentions with reference thereto.

Paragraph I of such judgment construed the will: "As giving the corpus of the estate of Eugene Perigo, Deceased, to Christena Mary Perigo, for her use during her life time, without any limitation whatever upon her use and disposition of the rents, profits, and income, from said corpus." Plaintiffs' third assignment argued that such paragraph erred in not holding that the will implied "a limitation upon" defendant's "use and disposition of the rents, profits, and income from said corpus to her own use, comfortable support and maintenance, in accord with standards established by testator during his lifetime, with remainder, if any, on her death to" plaintiffs. We conclude that the assignment has no merit.

In Bramell v. Cole, 136 Mo. 201, 37 S. W. 924, 58 Am. S. R. 619, relied upon by plaintiffs, it is said: "The general rule undoubtedly is that one holding the life estate is entitled to the income of the property held, but if a different intention clearly appears from the will the rule of law must give way to the intention." A different intention does not clearly appear in the will at bar.

As said in Restatement, Property, § 119, p. 371: "The owner of a possessory estate for life, during the continuance of such estate has the privilege of taking and receiving all issues and profits derived from the land." The obligations with respect thereto imposed by subsequent sections are not an issue in this case.

In Abbott v. Wagner, 108 Neb. 359, 188 N. W. 113, relied upon by plaintiffs who contend that the will therein is materially comparable with that at bar, it is said: "She had the right to the use and income of the property for life, and this she could rightfully assign or transfer to another, and the court will be under the necessity of protecting the assignee in such use and income under such restrictions and safeguards as will, at

the same time, protect the interests of the remainder-men; but the right to dispose of the corpus of the property was a limited right, as we shall hereafter show, and could be exercised only by her for her own legitimate and reasonable personal purposes, consistent with the objects for which the life estate was created, and supplemental thereto, and could not be assigned and transferred to another, except by transfers made in good faith for such fair considerations and for such objects as must have been in the contemplation of testator when making his will."

In Estate of Larson, 261 Wis. 206, 52 N. W. 2d 141, which involved a will comparable in relevant material respects with that at bar, the court said: "It was not necessary for the court to apply any rules of construction to paragraph Third of the will since the language there used was clear and unambiguous. The widow was given a life estate. When the 'use' of property is given to a donee under the will, the word 'use' is synonymous with giving a 'life estate.' 66 C. J., Use, p. 69. Thus, the accumulations of income became her separate property. See Allen v. Boomer (1892), 82 Wis. 364, 372, 52 N. W. 426; Evans v. Kemp (1899), 104 Wis. 87, 80 N. W. 98. The fact that the testator specifically provided that she should have 'the right to use and enjoy the principal, as well as the interest, if she shall have need thereof for her care, comfort, or enjoyment' makes it clear that it was his intent to grant her an absolute life estate. Appellants' argument that the clause, 'if she shall have need thereof for her care, comfort, or enjoyment,' limits the gift to a life support estate is not sound, regardless of the punctuation employed in that paragraph of the will. Such a limitation would be hostile to the nature of the gift.

" 'An absolute gift of income is not cut down or reduced by a subsequent gift of power to make use of the principal if necessary . . .' 3 Page, Wills, (lifetime ed.), p. 435, sec. 1156.

" 'It is a general rule that "where there is a gift to a person indefinitely, with a superadded power of disposal, the donee takes an absolute estate." ' Will of Zweifel (1927), 194 Wis. 428, 435, 216 N. W. 840, and cases cited." See, also, 33 Am. Jur., Life Estates, Remainders, etc., § 285, p. 789.

In 31 C. J. S., Estates, § 41, p. 47, it is said: "In general a life tenant is entitled to everything in the nature of income or profits accruing during the continuance of the life estate.

"In the absence of any limitation or restriction thereof, everything in the nature of income or profits accruing during the continuance of the life estate belongs to the life tenant, and at his death, if not otherwise disposed of by him, passes to his representative; but any appreciation in the principal of the estate belongs to the remainderman unless it is otherwise provided by the grantor." In the case at bar, we find no limitation or restriction upon the rents, profits, or income during the continuance of defendant's life estate.

Medlin v. Medlin (Tex. Civ. App.), 203 S. W. 2d 635, a recent case, involved a will more verbose with respect to intent, but comparable in all relevant material respects with that at bar. In fact, the opinion is as nearly in point upon the issues here involved as any cited or found by us. In the opinion it is said: "The contention under the first point of error it that the surviving wife, Minnie Medlin, received under the will a limited, rather than a general life estate. Appellants assert that the estate bequeathed to her was fashioned simply to provide and safeguard a comfortable living and support during her lifetime. * * * They contend that the use of the quoted words indicates that the testator's plan and purpose was to limit the life estate bequeathed to his wife only to such use as might be necessary for her reasonable and comfortable maintenance and support. We are unable to agree with the appellants in this contention. We find nothing in the

will which indicates a purpose on the part of the testator to limit in respect to her welfare and support the life estate bequeathed to his surviving wife. The adjectives, 'reasonable' and 'comfortable', are not used in the will and, to ingraft their implications of limitation upon the bequest to her would be to change completely a material portion of the will and the benefits which obviously the testator intended to confer upon her. It bequeaths to her, during her lifetime, all of the testator's property with remainder to the children, share and share alike, and then goes further and confers upon the wife the power and authority to sell, transfer, mortgage and convey part or all of the property during her lifetime. * * *

"The use of the phrases 'use and enjoyment' and 'use and benefit' in other portions of the will was not a limitation of the estate bequeathed. If it had any effect, it made more positive the absolute life estate bequeathed to her. The use and benefit of the property bequeathed constitutes the essential features of a life estate and, in fact, themselves constitute such an estate. No particular form of words is necessary for the creation of a life estate. Where a will bequeathes the use of rents or revenues or use and benefit during a life in being, its effect is to bequeath a life estate whether the technical term is used or not. Neely v. Brogden, Tex. Civ. App., 214 S. W. 614; Morris v. Eddins, 18 Tex. Civ. App. 38, 44 S. W. 203; Sexton v. Cronkhite, 74 Ind. App. 245, 127 N. E. 829; Bryson v. Hicks, 78 Ind. App. 111, 134 N. E. 874; Rutland v. Emmanuel, 202 Ala. 269, 80 So. 107.

"In support of their contention, appellants cite us to the cases of Johnson v. Goldstein, Tex. Com. App., 215 S. W. 840, and Hair v. Farrell, 21 Tenn. App. 12, 103 S. W. 2d 918, the latter a Tennessee case, in which the question of limitations in such bequests were involved. There is no doubt that a limitation, such as that contended for by appellants, and those contained in the wills involved in those cases, may be placed upon an

estate by a testator but, before it can be said that the estate bequeathed is burdened with such a limitation, the will must contain language clearly indicating such to be the purpose of the testator. In the Johnson case, it was held that not even a life estate passed to the devisee. The provision of the will was that he should have the homestead place 'to be used and enjoyed by him as a home to live at for and during his natural life'. The court held that this provision extended to the devisee only a right of occupancy of the premises as a home during his lifetime, and that it did not amount to a life estate. In the Hair case the testator specifically provided that the property was bequeathed subject to limitations and conditions as thereafter specified. The will then proceeded to limit the estate to be used by her for her own support and maintenance and 'so long as she does not waste and squander the same' (21 Tenn. App. 12, 103 S. W. 2d 921). * * *

"By the second point of error appellants contend the court erred in holding that, under the provisions of the will, the devisee, Minnie Medlin, is entitled to the rents and revenues derived from the property during her lifetime. They say that, under the provisions of the will, the rents and revenues, over and above that which is necessary for her reasonable and comfortable maintenance and support, pass to and become a part of the corpus of the estate. It is a general rule, well established in this and other jurisdictions of this country, that in the absence of restrictions or limitations in the instrument creating a life estate, a life-tenant is entitled to everything in the nature of revenue or income produced by the property during his tenancy. Wagnon v. Wagnon, Tex. Civ. App., 16 S. W. 2d 366, and authorities there cited. Appellants contend that Section VI of the will places restrictions upon the estate and limits the rents and revenues to such as might be necessary for the comfortable support of the life-tenant, Minnie Medlin, during her lifetime. They assert that the same section

specifically provides that the rents and revenues not necessary for the payment of debts and the comfortable support of the surviving wife pass to the corpus of the estate and become the property of the remaindermen. Section VI expresses the intention which the testator had in mind when he executed the will. It provides that his wife shall have the full and complete management, use and enjoyment of all of his property during her lifetime, including all rents and revenues to be derived therefrom. It expresses the purpose of extending to her power to sell and convey the property or any portion thereof for the purpose of paying debts or to be used by her during her lifetime. It then provides that any of such properties remaining on hand at the time of her death, including other properties which she may acquire by exchange or reinvestment of the proceeds of properties which she might sell, shall become portions of the remainder, but we find no such provision as to the rents and revenues. In our opinion, the first portion of Section VI clearly vests in the surviving wife the title and ownership of the rents and revenues in keeping with the general rule concerning life estates and are not included in that portion of the section which refers to the payment of the debts and the use which she is permitted to make of the property. Rents and revenues are not there mentioned and the word 'proceeds' has reference only to the money or other consideration she might receive from the sale of any of the corpus of the estate."

As we view it, the language used in the will at bar gave defendant an absolute possessory life estate in the corpus of the estate without any limitation upon her use and disposition of the rents, profits, and income therefrom, as her own and not as any part of the corpus of the estate. In that connection, it will be noted that the words: "I give, devise, and bequeath the rest and residue thereof" to plaintiffs, refers and relates solely to and gives them, subject to the conditions aforesaid

first to be performed, only any of said property which "shall not have been sold" by defendant "during her lifetime," together with "the proceeds of the sale of any such property which she may have sold and converted into other property and not disposed of during her lifetime," as held by the trial court in paragraph IV of its judgment hereinafter discussed, from which no cross-appeal was taken. Rents, profits, and income are not mentioned in testator's will, and the word "proceeds" therein refers only to money or other consideration which defendant might receive from the sale of any of the corpus of the estate. The wills involved in authorities relied upon by plaintiffs did not any of them contain the all-inclusive power of sale and disposition together with uses of the proceeds thereof or the limited remainder provisions found in the will here involved.

In its decree the trial court found that the will was "not ambiguous; that the testator understood the meaning of the words which he used in his will, and that his intent was to make ample provision for the support, care, comfort and enjoyment of Christena Mary Perigo in the event she survived him, and that he did not intend to limit her merely to the use, nor to the bare income of his property in which he gave her a life use; that the testator gave her the broad power of disposal recited in his will so as to enable her freely to dispose of any or all of the property, and to convert it into other forms by exchange or reinvestment, as her judgment might dictate, and to use the principal, or so much of it as she might reasonably need or desire, for her own maintenance, pleasure, enjoyment, and comfort, and that the testator intended to make Christena Mary Perigo the sole judge of the necessity and wisdom of any transfers, and as to the extent to which it should be desirable or necessary for her to encroach upon the corpus of the property." Thereafter the judgment construed the will: "II. As giving to Christena Mary Perigo the power of sale of the corpus of said estate or any part thereof as

the said Christena Mary Perigo may deem necessary or wise.

"III.   As giving to Christena Mary Perigo the right of use, disposition, expenditure, application, and investment of the proceeds of any sale of the corpus of said estate as to her may seem necessary or desirable for her own maintenance, pleasure, enjoyment and comfort."

In that connection, plaintiffs' assignments Nos. 4, 5, and 6 argued that such findings and paragraphs of the judgment were erroneous because they did not limit the exercise of the power of sale of the corpus by defendant as she "may reasonably deem necessary or wise, for the furtherance of the testator's intent to provide for her comfortable support and maintenance *in accord with standards established by him (the testator) during his lifetime,* and to preserve the estate for the benefit of the remaindermen named," (italics supplied), and likewise erroneously failed to so limit defendant's right "to the use, disposition, and expenditure, application and investment of the proceeds of any sale of the corpus of the said estate, * * *."

Plaintiffs relied primarily upon Abbott v. Wagner, ·supra, and In re Estate of Meldrum, 149 Minn. 342, 183 N. W. 835, cited and quoted from with approval therein. However, in the latter case the court finally said:   "The state has moved for a reargument.   We adhere to the original decision but some inaccuracies should be corrected.

"It is the opinion of the court that, under the terms of the will, the widow took only a life estate with the power to change the form of the corpus, but without any right, for her own benefit, to exhaust any portion of the principal.   Statements in the opinion suggesting a power in the widow to sell for her support should be considered as inadvertently made."   Thus, the authority is entirely distinguishable in the light of limited provisions of the will involved and does not support plaintiffs' contentions.

In Abbott v. Wagner, *supra,* this court said: "It is evident that the purpose of the testator was to make ample provision for the support, care, comfort and enjoyment of his wife, in case she survived him. He did not intend to limit her merely to the use, nor to the bare income of the property in which the life estate was created. It is obvious that the added power of disposal was bestowed upon her to enable her freely to dispose of any or all of the property, and to convert it into other forms, by exchange or reinvestment, as her judgment might dictate, and to use the principal, or so much of it as she might reasonably need or desire, for her own maintenance, pleasure, enjoyment and comfort, and she was made the sole judge of the necessity and wisdom of any such transfers, and as to the extent to which it should be necessary or desirable for her to encroach upon the corpus of the property, for the objects and purposes for which the power was bestowed. In all these matters it is obvious that testator intended to bestow upon his wife wide latitude and a large degree of discretion, but we cannot hold that testator intended to place it in her power to dispose of the corpus of the estate, or any substantial part of it, by gifts inter vivos, unless we are also prepared to hold that she can dispose of it by will, to whomsoever she pleases, which would imply a fee simple estate. Having construed the will to create in the wife but a life estate with power of disposal, we feel impelled to hold that any disposal made by her must be consistent with the objects and purposes testator had in mind in creating the life estate."

In that respect it is interesting to note that the judgment of the trial court in the case at bar is materially in conformity therewith, and we find no language in the will and none can be implied limiting defendant's power of sale or the use, disposition, expenditure, application, and investment of the proceeds therefrom as her own separate property *"in accord with standards established by him (meaning testator) during his lifetime."*

(Italics supplied.) Plaintiffs' contention in that regard has no merit.

Concededly, defendant must exercise the power of sale in good faith for a valuable consideration in the exercise of reasonable judgment, and must not intentionally waste or squander the corpus for the purpose of preventing the estate or any part thereof from ultimately descending to plaintiffs, but testator's primary concern here was defendant's maintenance, pleasure, enjoyment, and comfort throughout her old age without any regimentation or unlawful interference by plaintiffs or anyone else of secondary concern. We conclude that plaintiffs' fourth, fifth, and sixth assignments have no merit.

Paragraph IV of the trial court's judgment read: "That upon the death of Christena Mary Perigo, any of the property comprising the corpus of the estate of Eugene Perigo, deceased, which Christena Mary Perigo may not have sold during her lifetime, and the proceeds of the sale of any such property which she may have sold and converted into other property *and not disposed of during her lifetime,* shall first be applied to the payment of the expenses of her last illness, her funeral charges, the expenses of the administration of her estate and the payment of all debts which she may have contracted, with remainder over as follows, to-wit:" to plaintiffs, as aforesaid. (Italics supplied.) Paragraph V also reads: "That during her lifetime the defendant, Christena Mary Perigo, has no right, power, or authority to make any gift of, nor to devise any of, the property comprising the corpus of the estate of Eugene Perigo, deceased, nor the proceeds of the sale of any such property which she may have sold and converted into other property *and not disposed of during her lifetime.*" (Italics supplied.)

Plaintiffs' assignments Nos. 7 and 8 argued that use of the italicized words "and not disposed of during her lifetime" respectively appearing in each of such para-

graphs of the judgment were erroneous because such broad ambiguous language is not synonymous with "and not used by her during her lifetime" and might be employed by defendant to ultimately subvert the intent of the testator. As a matter of course, when the words "and not disposed of during her lifetime" are employed, as they must be, in the light of testator's will and the trial court's findings and judgment aforesaid construing the same, they mean "and not disposed of during her lifetime for the purpose of her own maintenance, pleasure, enjoyment and comfort." We so construe the language "and not disposed of during her lifetime" which respectively appears in paragraphs IV and V of the judgment. Thus plaintiffs' assignments Nos. 7 and 8 should not be sustained.

Plaintiffs' ninth and last assignment contends that the trial court erred in refusing injunctive relief. Such assignment has been heretofore disposed of contrary to that contention, and requires no further discussion.

For reasons heretofore stated, the judgment of the trial court should be and hereby is affirmed. All costs are taxed to plaintiffs.

AFFIRMED.