182 N.W.2d 881 (1970)
In re ESTATE of Lillian C. PERKINS, Deceased.
FIRST NATIONAL BANK OF WINONA and Mrs. Clifford Dartt (nee Bertha Featherstone), et al., beneficiaries under the last will and testament of Fred O. Perkins, Deceased, Appellants-Respondents,
v.
MERCHANTS NATIONAL BANK OF WINONA, Respondent,
Mrs. Lillian Walker, et al., beneficiaries under last will and testament of Lillian C. Perkins, Deceased, Respondents-Appellants.
Nos. 42411, 42412.
Supreme Court of Minnesota.
December 24, 1970.
*882 Bernard M. Harroun, Minnetonka, for appellants.
Harold J. Libera, Winona, George Neperud, for Walker et al.
R. N. Thomton, Litchfield, for respondents.

OPINION
NELSON, Justice.
Appeals were taken to the District Court of Winona County from orders of the probate court of said county allowing the final accounts in the matter of the estate of Fred O. Perkins, deceased, and in the matter of the estate of Lillian C. Perkins, deceased. The two matters were consolidated for trial and were finally disposed of by an order of the district court on December 4, 1969, amending the original findings of fact, conclusions of law, and order for judgment and denying a new trial. Separate appeals were thereafter taken to this court by the First National Bank of Winona and Mrs. Clifford Dartt (nee Bertha Featherstone) and other beneficiaries under the last will and testament of Fred O. Perkins; and by Mrs. Lillian Walker and other beneficiaries under the last will and testament of Lillian C. Perkins.
The pertinent facts are as follows: Fred O. Perkins died testate November 3, 1932. The third paragraph of his will, dated January 16, 1929, reads as follows:
"THIRD, I give, devise and bequeath to my beloved wife, Lillian C. Perkins, in case she survives me, all of the rest, residue and remainder of my estate of every kind and nature, and wheresoever situated, whether real, personal or mixed, to have, hold, use and enjoy the rents, interest, issues and profits therefrom, and with the further right to use so much and such part of the principal or corpus of my said estate as she may desire from time to time for her support, maintenance, comfort and pleasure, during the term of her natural life."
During the course of the probate, Lillian C. Perkins petitioned the court to set aside the homestead and various personal property in the amount of $975, which was allowed by the probate court. The final decree was issued December 2, 1933, covering various stock and the homestead valued in the amount of $22,987.08. In its final decree the court dealt with the property as follows:
"To the said spouse Lillian C. Perkins, to have, hold, use and enjoy the rents, interest, issues and profits from said real *883 estate and personal property, and the whole thereof, with the right and power to sell and convey and dispose of and transfer said real estate and personal property or so much and such part thereof as she may desire from time to time for her support, maintenance, comfort and pleasure, during the term of her natural life."
Subject to the use, interest, rights, and estate of Lillian C. Perkins, specific bequests were vested and the rest, residue, and remainder decreed to 22 various nieces and nephews as provided for in the will.
Subsequently, Lillian transferred all of the stock to her name and controlled and managed it until her death. Cash dividends were paid directly to her from 1933 to 1967. She treated these dividends as income and paid a resulting income tax thereon.
The assets of Fred Perkins' estate included 1,100 shares of International Harvester stock, of which Lillian Perkins sold 100 shares on or about July 24, 1935, and 100 shares in 1937. In 1953 she sold all of the stock in the Merchants National Bank of Winona, and in 1962 she sold all of the Red Wing Sewer Pipe stock, both of which were also included in Fred Perkins' estate.
Stockholder records from International Harvester Company indicate that prior to June 5, 1948, there appeared outstanding 900 shares of common stock in the name of Lillian C. Perkins. On that date an additional 1,800 shares were issued in the name of Lillian C. Perkins, making a total of 2,700 shares. On March 20, 1965, an additional 2,700 shares were issued in the name of Lillian C. Perkins, making a total of 5,400 shares, which appeared in her name at the time of her death.
On February 9, 1967, Lillian C. Perkins executed her last will and testament, leaving the residue of her estate to five nieces and nephews, all of whom were remaindermen under the will of Fred O. Perkins with the exception of Lillian Walker and Blanche Greene, and to three other legatees who were heirs of remaindermen under the will of Fred O. Perkins.
Lillian C. Perkins died testate on February 19, 1967, and an inventory and appraisal was filed with the court showing the assets of her estate to be $117,080.07. This figure did not include any of the stock which was held in the name of Lillian C. Perkins at the time of her death.
It was stipulated by the parties that the homestead located in Winona, Minnesota, was the property of Lillian C. Perkins and should pass in her estate; that the will of Fred O. Perkins did not create a trust; and that the proceeds from any corporate stock sold by Lillian C. Perkins during the life estate became her property absolute.
The district court made findings of fact, conclusions of law, and order for judgment on September 15, 1969, the following portions of which are pertinent here:
"8. That the original eleven hundred shares of International Harvester stock were reduced to nine hundred shares by sales made by Lillian C. Perkins during her lifetime and that by reason of stock splits, or stock dividends, these nine hundred shares had become fifty-four hundred shares by the time of the death of Lillian C. Perkins.
"9. That the ten shares of Kahler Corporation and the fifty shares of Kahler-Roberts Corporation were consolidated and by virtue of reverse stock splits and stock splits, became four hundred eighty shares of Kahler Corporation stock at the time of the death of Lillian C. Perkins.
"10. That during her lifetime, Lillian C. Perkins received cash dividends on the stocks above referred to which money she used in part for her maintenance and support and the balance of which she deposited in U. S. savings bonds, checking accounts, savings accounts and share accounts and a portion of which she loaned to one Raymond J. Compton.
* * * * * *

*884 "CONCLUSIONS OF LAW
"1. That Lillian C. Perkins acquired the fee title to the homestead described in the Decree of Distribution entered by the Winona County Probate Court on December 2nd, 1933, by virtue of the Court's Order of December 9th, 1932, setting aside the homestead to the surviving spouse and not by virtue of the aforesaid Decree of Distribution.
"2. That Lillian C. Perkins took a life interest in the personal property left by the decedent, Fred O. Perkins, with the right to use so much of the principal and/or interest thereof as she might desire from time to time for her support, maintenance, comfort and pleasure, during the term of her natural life.
"3. That [the 22 nieces and nephews] received the fee title to the personal property in the Estate of Fred O. Perkins, both as to principal and interest, subject to the life estate of Lillian C. Perkins.
"4. That the life estate of Lillian C. Perkins terminated with her death on February 19th, 1967.
"5. That the property owned by Lillian C. Perkins and subject to the terms of her Will consist of the [homestead] and one ladies ring valued at $400.00, which property should be delivered to the Merchants National Bank of Winona as Executors of the Estate of Lillian C. Perkins and distributed under her Will.
"6. That the 5,400 shares of stock in the International Harvester Corporation, the 480 shares of stock in the Kahler Corporation, the U. S. Savings Bonds in the amount of $69,000.00, the checking account in the Merchants National Bank of Winona in the amount of $7,951.03, the savings certificates of the Merchants National Bank of Winona in the amount of $20,000.00, a note signed by Raymond J. Compton in the amount of $3,000.00, a savings account in the Merchants National Bank of Winona with a balance of $3,552.86, and a share account in the Fidelity Savings and Loan Association in the amount of $12,733.57 are the property of the Estate of Fred O. Perkins and should be delivered to the First National Bank of Winona as Administrator de bonis non of the Estate of Fred O. Perkins for distribution under his Will."
The heirs of Lillian C. Perkins moved to amend the findings of fact, conclusions of law, and order for judgment, or, in the alternative, for a new trial. The court entered an order amending the findings of fact, conclusions of law, and order for judgment, and denying a new trial. The order provided in part:
"2. There is added to the Findings of Fact the following Finding of Fact Number 13:
"`During her lifetime Lillian C. Perkins received cash dividends referred to in Paragraph 10 of these Findings from all of the shares of stock of International Harvester, Kahler Corporation and Kahler-Roberts Corporation in her name, and the total cash dividends received from International Harvester in her lifetime totals one hundred forty-eight thousand one hundred five dollars ($148,105.00).'
"3. There is added to the Findings of Fact the following Finding of Fact Number 14:
"`The tax returns of Lillian C. Perkins for the years 1951 through 1967 revealed that she received cash dividends in those years totaling one hundred nine thousand two hundred dollars and eight cents ($109,200.08), and interest in those years of thirty-two thousand three hundred forty three dollars and one cents ($32,343.01), and that all of said dividends of International Harvester and Kahler Corporation were ordinary cash dividends.'

*885 "4. There is added to the Findings of Fact the following Finding of Fact Number 15:
"`There was no expression of intent in the final decree of the Fred O. Perkins Estate that Lillian C. Perkins, his widow, was not entitled to receive and retain the income therefrom as her estate, and there was no direction in the final decree assigning said income, interest and cash dividends to the remaindermen.'
"5. There is added to the Findings of Fact the following Finding of Fact Number 16:
"`On August 28, 1968, the Probate Court, Winona County, Minnesota, in the Estate of Lillian C. Perkins, deceased, entered its Order allowing the final account in said estate, which said Order, after payment of necessary expenses of administration, funeral expenses, taxes and legacies, showed a balance on hand for distribution of one hundred four thousand three hundred and forty-two dollars and twenty-five cents ($104,342.25), which consisted of cash in the amount of one hundred one thousand three hundred forty-two dollars and twenty-five cents ($101,342.25) and a promissory note signed by one Raymond J. Compton in the amount of three thousand dollars ($3,000.00), and that all of said cash remaining for distribution in the Estate of Lillian C. Perkins was acquired by her in the exercise of the life interest granted to said Lillian C. Perkins under the Will of her husband, Fred O. Perkins, but said cash remained undisposed of at the time of the death of Lillian C. Perkins on February 19, 1967, but is properly included for distribution under the Estate of Lillian C. Perkins as a result of the life estate granted to the said Lillian C. Perkins.'
* * * * * *
"2. Paragraph 2 of the Conclusions of Law is amended to read as follows:
"`Lillian C. Perkins became the owner of all interest, income and cash dividends derived from the Estate of Fred O. Perkins during her tenancy, and the income remaining unexpended at the death of Lillian C. Perkins on February 19, 1967, constitutes a part of her Estate, and does not pass to the remaindermen under the Will.'
"3. Paragraph 3 of the original Conclusions of Law is withdrawn and deleted from said Conclusions of Law.
* * * * * *
"5. Paragraph 5 of the original Conclusions of Law is amended to read as follows:
"`That the property owned by Lillian C. Perkins and subject to the terms of her will consists of the [homestead] and one ladies ring valued at $400.00, the U. S. Savings bonds in the amount of $69,000.00, the checking account in the Merchants National Bank of Winona in the amount of $7,951.03, the savings certificates of the Merchants National Bank of Winona in the amount of $20,000.00, a note signed by Raymond J. Compton in the amount of $3,000.00, a savings account in the Merchants National Bank of Winona with a balance of $3,552.86, and a share account in the Fidelity Savings and Loan Association in the amount of $12,733.57.'
"6. Paragraph 6 of the original Conclusions of Law is amended to read as follows:
"`That the 5,400 shares of stock in the International Harvester Corp., the 480 shares of stock in the Kahler Corporation, are the property of the Estate of Fred O. Perkins and should be delivered to the First National Bank of Winona as Administrator de bonis non of the Estate of Fred O. Perkins for distribution under his will.'"
1. The district court, in its memorandum attached to the amended findings and made a part thereof, stated that the original *886 findings were erroneous in that the court failed to give due consideration to the right of the life tenant to the ownership of income, interest, and cash dividends acquired during her tenancy as a result of the life estate created by the will of Fred O. Perkins. The district court indicated that the probate court decree in the estate of Fred O. Perkins clearly established a life estate in Lillian C. Perkins with remainder to his heirs. Relying on In re Douglas' Estate, 65 Wash.2d 495, 398 P.2d 7, the court below concluded that the unexpended income, interest, and cash dividends derived from the estate during Lillian C. Perkins' tenancy constituted a part of her estate at her death, and would not pass to the remaindermen under the will of Fred O. Perkins.
We subscribe to the view of the district court that the life estate granted to Lillian C. Perkins was absolute in respect to her right to make full use of the interest, income, and cash dividends. "An absolute gift of income is not cut down or reduced by a subsequent gift of power to make use of the principal if necessary." Perigo v. Perigo, 158 Neb. 733, 743, 64 N. W.2d 789, 795. Consequently we, as did the court below, adhere to the well-established rule that a holder of a life estate created by will is entitled to all income derived from the estate during his tenancy and income which remains unexpended at his death constitutes a part of his estate and does not pass to the remaindermen under the will.
2. There are two principal rules followed in the absence of an expression by the creator of the trust to determine the allocation of cash dividends and stock dividends between income and principal. Under the so-called Massachusetts rule, cash dividends are treated as income and all stock dividends as principal. Under the so-called Pennsylvania rule, the source of the dividend rather than its form determines whether and to what extent it is income or principal. Under this rule, such dividends are income if declared out of the earnings accruing to the corporation during the period of the trust but are principal if declared out of earnings accruing prior to the creation of the trust.
In Goodwin v. McGaughey, 108 Minn. 248, 122 N.W. 6, this court adopted the Pennsylvania rule, which was followed in In re Trusts Under Will of Whitacre, 208 Minn. 286, 293 N.W. 784, and In re Trust Under Will of Koffend, 218 Minn. 206, 15 N.W.2d 590. However, due to growing complexities of corporate accounting and the difficulties of determining whether a stock dividend comes from earnings and, if so, when it was earned, have led many courts to adopt and follow the Massachusetts rule.
In In re Trust Created by Warner, 263 Minn. 449, 117 N.W.2d 224, part of the trust property consisted of securities including a portion of common stock of the Northern Pacific Railway Company. During the year ending April 30, 1959, Warner Holding Company received 220 shares of common stock of Northern Pacific as a nontaxable stock dividend on the common stock it held. Appellant in that case contended that this stock dividend constituted income and belonged, at least in part, to the income beneficiaries. Respondent in the Warner case contended that, and the trial court held, it belonged to principal. We affirmed without rejecting the Pennsylvania rule, finding that the testator had provided for discretionary allocation by the trustee and that his discretion had not been arbitrarily exercised.
Following In re Trust Created by Warner, supra, this court in 1963 decided In re Trust Under Will of Gardner, 266 Minn. 127, 123 N.W.2d 69, which states that in 1951 we adopted substantially § 5 of the Uniform Principal and Income Act, coded as Minn.St. 501.47, which adopts the Massachusetts rule. (Section 501.47 was repealed, L.1969, c. 1006, § 17, but reenacted in substance under Minn.St. 501.52 of the Revised Uniform Principal and Income Act.)
*887 3. At the time this act was adopted by the Minnesota Legislature, only two cases had passed on the constitutionality of the retroactive effect of such act, namely, Crawford Estate, 362 Pa. 458, 67 A.2d 124, and Franklin v. Margay Oil Corp., 194 Okla. 519, 153 P.2d 486, which held under the circumstances therein the statute could not constitutionally be given retroactive effect. However, in 1958, the Supreme Court of Wisconsin held to the contrary in Will of Allis, 6 Wis.2d 1, 94 N.W.2d 226, 69 A.L.R.2d 1128, and thereafter the Pennsylvania court, in Catherwood Trust, 405 Pa. 61, 173 A.2d 86, overruled Crawford Estate, supra, and followed the Wisconsin court in Will of Allis, supra. In the Warner case we discussed these cases and said (263 Minn. 468, 117 N.W.2d 236):
"* * * We think that as far as the constitutional question is concerned these two decisions [Will of Allis, supra, and Catherwood Trust, supra] should be followed."
Thus court said in In re Trust Under Will of Gardner, 266 Minn. 127, 134, 123 N.W.2d 69, 74:
"* * * It may well be said that the popularity of the Massachusetts rule is due to its practicability and that the Pennsylvania rule has been discarded because of its impossibility of application, but whatever the reason, whether born of necessity or adopted wholly because it is more applicable in the administration of trust affairs, we think it is clear that a change in the rule by the legislature does not involve a deprivation of constitutional rights of the income beneficiary. We therefore hold that the application of Minn.St. 501.47 retroactively to a trust created prior to its enactment is not violative of the constitutional rights of income beneficiaries of such trust."
We therefore reach the conclusion that the remaindermen under the will of Fred O. Perkins are entitled to the stock that remains, including the increase in stock, while the cash, including interest, income, and cash dividends, and savings bonds may properly be distributed to the heirs of Lillian C. Perkins.
We have carefully considered all the issues raised by the appeals herein, and after due deliberation we reach the conclusion that the order amending the findings of fact, conclusions of law, and order for judgment, and denying a new trial finds ample support in the record and is in all respects entitled to an affirmance.
Affirmed.